CORYDON F. CRAIG, Appellant, v. BERNARD DONNELLY
*et al.*, Respondents.

Kansas City Court of Appeals, December 24, 1887.

1. FORCIBLE ENTRY AND DETAINER—WHAT ARE THE ISSUES INVOLVED
IN ACTION OF.—In an action of forcible entry and detainer, neither
the title, nor the right to the possession is in issue. The question
is merely, has there been a forcible entry on the plaintiff's posses-
sion ? If there has been the intruder must restore the possession,
place the party *in statu quo*, and then, if he has a cause, he can
assert it by legal proceedings. The law does not permit him to
redress his grievance with his own hand, and if he does, the law
will undo his work, and place the parties as they were before the
entry.

2. ———— CHARACTER OF POSSESSION WHEN WRONGFULLY OBTAINED.
However wrongfully a possession may be obtained, it cannot be
intruded upon, and a trespasser may maintain the action. And an
agent or servant may assert his possession and resist intrusion. It
is the fact of possession alone that is material. One does not need
to be a tenant to bring this action.

APPEAL from Jackson Circuit Court, HON. TURNER
A. GILL, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action of forcible entry and detainer,
begun before a justice of the peace, and removed by
*certiorari* to the circuit court. At the close of the
plaintiff's case a demurrer to the evidence was sustained
and defendant appeals. It appears from the testimony
that the controversy is over the possession of the "Gillis
Opera House" in Kansas City ; that plaintiff entered
into the possession of the property under the following
written paper : "This agreement, made and entered
into this, the fifth day of September, 1883, by and
between Bernard Donnelly and Francis M. Black, execu-
tors of the last will of Mary A. Troost, and William S.
Gregory and John Campbell, trustees under said will,

parties of the first part, and Corydon F. Craig, party of the second part; witnesseth: The parties of the first part do hereby constitute and appoint said second party general business manager of the Gillis Opera House, at Kansas City, Missouri, for a period of five years, with the right to make contracts with companies and to employ assistance in his own name and not in the name of the parties of the first part, or any of them; said party of the second part takes charge and control and possession of the opera house (not including the storerooms), and agrees to conduct the business therein for which it has been constructed, with such attractions and entertainments only as are adapted to and approved by first-class opera houses; to employ and pay, himself, all help and assistance needed and required in the conduct of such business, and pay, himself, all expenses, including fuel, gas and water bills, in the conduct of such business; to take all needful care and caution for the protection and preservation of the house, its machinery, fixtures, and furniture of every description, and to that end will keep some suitable person or persons in and about the house at all times when fire or lights are kept therein. He is not required to insure the buildings or apparatus, but will do all such things in the way of care and precaution against fire that good responsible insurance companies may require to be done. He is to have full and complete control of the house, run and manage the same for himself and in his own name, with these limitations, that is to say: He is to consult with the parties of the first part, or some of them, as to the class of attractions, the percentage allowed to companies and persons using the house, the method of selling tickets, the person or persons employed by him to handle the moneys, and the number of deadheads allowed, and as to all of these things mentioned in these limitations the parties of the first part are to have a superintending control and the right of final decision. It is agreed that the parties of the first part shall have thirty-three and one-third per cent. net, after deducting the percentage and amount

going to companies, person, or persons giving the entertainment, to be paid to them daily, of the entire proceeds of the opera house, and of the moneys taken in on account of the same, and the remainder shall belong to said party of the second part. The party of the second part will pay all help promptly, and pay the same in full at the end of each and every week, and the failure to comply with these provisions with respect to the payment of bills and help shall, at the option and election of the parties of the first part, render this contract void, and the party of the second part will, within thirty days of this date, give to the parties of the first part a bond with good security, in the sum of one thousand dollars, for the faithful performance of these provisions with respect to payment of help and expenses of the house. The executors agree to proceed with all reasonable dispatch with the completion of said house, and complete and furnish the same as now contracted and contemplated. Any new and additional improvements which the parties of the first part deem advisable to make shall be made at their expense, but the said party of the second part agrees to keep the house, scenery, apparatus, and fixtures in good repair at his own expense, he not being liable to repair damages done by the elements without his negligence. The trustees and executors reserve absolutely for their own use box number one and four seats in the auditorium at all times. If the tenants in the storeroom desire to heat by steam they shall make their arrangements therefor with said second party and pay him a reasonable compensation for the heat. It is understood that the executors are in debt on account of building and furnishing the house, and every reasonable effort will be made to discharge the debt as fast as possible, and until that is done the executors are to be taken and regarded as parties of the first part, and after that the trustees alone. Should said house be destroyed by fire, wind, water, or lightning, or thereby become so damaged as to be wholly unfit for the purposes of an opera house, then this agreement shall be at an end on all

hands unless continued in force by subsequent agreement."

The bond provided for in said writing is as follows: "Know all men by these presents, that we, Corydon F. Craig, as principal, and H. H. Craig and Jas. C. Dunn, as his securities, are firmly held and bound unto Bernard Donnelly and Francis M. Black, executors of the last will of Mary A. Troost, and unto William S. Gregory and John Campbell, trustees under said will, and unto each and all of them, jointly and severally, in the sum of one thousand dollars, for the payment of which, well and truly to be made, we do hereby bind ourselves, our heirs, executors, and administrators, which said obligation is upon this consideration; that, whereas, said Craig has been given the charge and management of the Gillis Opera House, and is to run and manage the same for himself and in his own name; and he has agreed to pay all help promptly, and pay the same in full at the end of each and every week, and all other expenses of said house he agrees to pay monthly. Now, if the said Craig shall faithfully comply with, perform, and carry out these agreements, each and all of them above set forth, then this obligation is to be void, otherwise to remain in full force and effect. This bond is made pursuant to said agreement, which is in writing and dated fifth of September, 1883, and is not to affect any of its provisions, but is in compliance therewith. In testimony whereof, we have hereunto subscribed our names and affixed our seals this the twenty-eighth day of September, A. D., 1883."

The evidence showed that plaintiff occupied and run the house for three years, and until he was forcibly put out by defendants; that he hired the necessary servants, engaged and exhibited theatrical and other companies, during all this time. Plaintiff stated in his testimony that he took actual possession and control of the house on September 10, 1883, and that, in the summer of 1886, he went to New York, as was his custom, to engage companies for the ensuing season; that he had

control and possession of the house at that time, and left his brother in charge, to act for him in his absence; that, having heard of some dissatisfaction on the part of defendants, and that they contemplated some sort of action, he went to one of them and asked if it was true, stating that if it was, he would not go to New York as he intended, but would stay and "fight it out;" that he would not go if he was to have any trouble, but would remain and "fight;" that, being assured nothing was contemplated by defendants, he left; on departing for New York he placed his brother, who had been in his employ for some two years, in charge. Other testimony showed that during plaintiff's absence, defendants gave notice of the termination of the agreement, by leaving it with one of the servants in the building, who handed it to plaintiff's brother; that, on the same day, defendants came in and demanded of the brother that he leave the house, which demand was refused, and instructions given to the servants not to get out, unless they were "dragged out or put out by law;" that defendants returned again the same day and said to plaintiff's brother that they had decided to take charge of the house; that he was laying himself liable to a fine and imprisonment, and in various other ways tried to intimidate him; that he told them he would not go out unless he was put out by force; that, finally, defendants took out a warrant for his arrest, and had him arrested and taken out by an officer. The complaint was, as is stated by the witness, "that they were in fear of their lives; that I was armed with a deadly weapon, and had taken forcible possession of the house;" that he gave bail, and, on returning to the house, found that new locks had been put on and that the doors were locked against him.

CRITTENDEN, McDOUGAL & STILES, for the appellant.

I. The agreement under which plaintiff took possession and control was, in effect, a lease. At all

events, it invested him with the right of possession. *Mason v. Clifford,* 4 Fed. Rep. 177 ; *Fiske v. Mf'g. Co.,* 14 Pick. 491 ; *Offerman v. Starr,* 44 Am. Dec. 211 ; *Rooks v. Moore,* 57 Am. Dec. 569 ; *Stanley v. Hotel Co.,* 29 Am. Dec. 485 ; *Porter v. Merrill,* 124 Mass. 534 ; *McHose v. St. Louis F. I. Co.,* 4 Mo. App. 514 ; *Jolly v. Single,* 16 Wis. 298.

II. But whether a lease or not, the writing certainly invested the plaintiff with the right of possession. And in any view his actual possession shielded him from invasion. Rev. Stat., sec. 2418. Being thus in possession, defendants' remedy, if they had any, was by an action of forcible entry and detainer. To constitute a lease it is not essential that the words, landlord, tenant, rent, lease, or lessee, should be used. It is sufficient if it confers possession on one party and deprives the other of it. Wood's Landlord and Tenant, 291, 298, 349, 357 ; *Dilworth v. Fee,* 52 Mo. 130 ; *Boone v. Stover,* 66 Mo. 430.

III. Craig being in peaceable possession, could not lawfully be ejected, but, being ejected, may recover the possession in this action. *Harris v. Turner,* 46 Mo. 438 ; *Beeler v. Caldwell,* 29 Mo. 72 ; s. c., 33 Mo. 84 ; *Spalding v, Mayhan,* 27 Mo. 377 ; *Krenet v. Myers,* 24 Mo. 107. The entry of defendants was not given them by law, nor did they enter in a peaceable manner. Rev. Stat., sec. 2418 ; *Kamerick v. Castleman,* 23 Mo. App. 481 ; Taylor's Landlord & Tenant, secs. 786, 788, 789 ; *King's Adm'r v. The St. Louis Gas Co.,* 34 Mo. 34 ; *Willis v. Stephens,* 24 Mo. App. 502.

KARNES & KRAUTHOFF, for the respondents.

I. The mere personal presence on premises, or a physical occupancy of them, without regard to its nature or character, is not a sufficient basis to maintain a proceeding under the statute of forcible entry and detainer ; especially where the defendants, as here, were, at the time of the alleged entry, in the lawful possession.

of the premises in dispute, the plaintiff having occupied the same for them, as servant, and not in his own right, actual or pretended. The rule is, that there must be, by right or wrong, a possession in distinction from a bare custody or mere occupancy. 2 Wat. Tresp. pp. 606, 607, secs. 1172, 1173; 2 Bish. Crim. Law, sec. 412; 2 Bish. Crim. Prac., sec. 385; *Commonwealth v. Keeper*, 1 Ashm. [Pa.] 140; *People v. Fields*, 1 Lans. 222, 240–247; *Chenowyth v. Granby Co.*, 74 Mo. 173; 1 Rev. Stat., secs. 2419, 2433, 2444. One cannot be guilty of forcible entry upon premises held merely by his servant, agent, or bailiff. In such case, the possession is just as much that of the master or principal as if he were personally in charge. "It is the occupation of the master, through the medium of the servant, which is, in law, the possession of the master of the servant." *Bertie v. Beaumont*, 16 East, 33, 36; *Johnson v. Carter*, 16 Mass. 443, 445; *State v. Curtis*, 4 Dev. & Bat. 222, 227; *McQuade v. Emmons*, 38 N. J. Law, 397, 399; *Wright v. Mullens*, 2 Stew. & Port. 219; 2 Bish. Crim. Law, sec. 412; Wood's Landlord & Ten., sec. 20. The master could discharge his servant at any time, although there was a contract for a longer term, and "when the servant was dismissed and the legal relation existing between them thereby put an end to, his right of occupancy was ended, and his longer remaining on the premises of his master was a trespass. * * * His removal could be lawfully accomplished by the act of the owner, without the aid of any judicial tribunal." *McQuade v. Emmons*, 38 N. J. Law, 397, 399, 400, and cas. cit.; *Chenowyth v. Granby Co.*, 74 Mo. 173; *Kerrains v. People*, 60 N. Y. 225. It is not a question whether the servant was rightfully discharged. The master's right to expel a discharged servant is absolute. If wrongful the servant's remedy is on the contract. *Haywood v. Miller*, 3 Hill, 90; Wood's Landlord & Ten., sec. 20, p. 53; *Rex v. Stock*, 2 Taunt. 339, 342; *State ex rel. v. Walker*, 88 Mo. 279. In such a case the master does not "enter" upon the servant's "pos-

session," for it was the master's own possession and no "entry" was necessary to regain it. Hence, section 2418 has no application. It was necessary for the plaintiff to show his possession (sec. 2433), and the defendant could defeat his action by disproving any fact or element which the plaintiff was bound to prove. *People v. Fields*, 1 Lans. 234.

II. In this case, Craig's occupancy was under a written instrument, which speaks for itself. Hence, it was a question of law whether he could maintain this proceeding. Wood's Landlord & Ten. 56, 57; *Rex v. Cheshunt*, 1 B. & Ald. 473; *Whitney v. Clifford*, 46 Wis. 138. By this instrument, Craig was "constituted and appointed general business manager of the Gillis Opera House." There are no other terms or provisions of the contract which give him any other or higher relation than this. The provision for managing the business in his own name and at his own expense was simply intended, *inter partes*, that he should defray the expenses of the business out of his share of its receipts. That it was not intended to absolve the principals from liability to third persons is apparent from the requirement that Craig should give a bond. The trustees were given full control over Craig and "the right of final decision" as to all matters pertaining to the active management of the house and as to its financial prosperity. The instrument is clearly a mere employment, gave Craig a bare custody and occupation which never ceased to be the legal possession of the trustees, and conferred upon him no interest or estate in the premises. Wood's Landlord and Tenant, sec. 4, p. 6; 1 Taylor's Land. & Ten. [8 Ed.] sec. 14; *State v. Page*, S. C. Law, 408; *Chenowyth v. Granby Co.*, 74 Mo. 173; *Mayhew v. Suttle*, 4 El. & Bl. 347; 82 Eng. Com. Law; *Chatard v. Donovan*, 86 Ind. 20; *Whitney v. Clifford*, 46 Wis. 138; *Beecher v. Venn*, 35 Mich. 466; *Taylor v. Caldwell*, 3 B. & S. 826; 113 Eng. Com. Law, 824; *Haywood v. Miller*, 3 Hill [N. Y.] 90; *Wilson v. Martin*, 1 Denio [N. Y.] 602; *White v. Maynard*, 111 Mass.

250; *Kerrains v. People*, 60 N. Y. 225; *Regina v. Sparrell*, L. R., 1 Q. B. 72. The whole instrument must be taken together to discover the intention of the parties. Although terms may be used which might import a lease or delivery of the possession, they must yield to the intention disclosed by the entire instrument. Thus, where a hall was "let" at a specified "rent," the context was such that it was nevertheless held a mere contract. *Taylor v. Caldwell*, 3 B. & S. 826, 832; *Hughes v. Derry*, 9 Carr. & P. 493.

III. The affidavit to the complaint in this case was made merely on belief. This was insufficient. A verification of the affiant's own knowledge was necessary to confer jurisdiction. Rev. Stat., sec. 2423; 2 Wat. Tresp., sec. 1207, p. 639; 2 Taylor's Landlord & Ten. 511; *Decker v. Whitney*, 1 Thomps. & Cook, 533; *Fletcher v. Keyte*, 66 Mo. 285. Section 2461, in the same chapter, permits an affidavit, in the cases there referred to, on belief. This is proof conclusive that the affidavit required by section 2423 cannot be so made. *State v. Hayward*, 83 Mo. 299, 302, 303.

IV. This action was instituted August 6, 1886, and removed to the circuit court on the ninth. Several days after this Craig ousted the defendants' servants in charge, was in sole occupancy of the premises, and " claimed possession." He so notified Donnelly and barricaded the doors and fastened the windows. He thereby gained the purpose of his action, and could not longer prosecute it—except, perchance, for the damages, if any, which had accrued in the interim of seven days; and of such there was no proof.

ELLISON, J.—To maintain this action there must have been a possession in the plaintiff, and this fact of possession and the intrusion upon it is the sole issue.

I. There is no legal rule more fully and definitely settled than that, in an action of forcible entry and detainer, neither the title nor the *right* to the possession

is in issue. The matter of *right* is foreign to the case. The question is merely, has there been a forcible entry on the plaintiff's possession? If there has been the intruder must restore the possession; place the party *in statu quo*, and then if he has a case he can assert it by legal proceedings. The law does not permit him to redress his grievance with his own hand, and if he does so redress it, the law will undo his work and place the parties as they were before the entry. Such, undoubtedly, is the rule in this state. *Krevet v. Meyer*, 24 Mo. 107; *Vancman v. Walker*, 47 Mo. 169; *Buler v. Cardwell*, 33 Mo. 85; *Dilworth v. Fee*, 52 Mo. 131. So jealous is the law in this respect that it is held that one forcible entry and detainer cannot be set off against another. *King v. Gas Light Co.*, 34 Mo. 34. A trespasser may maintain the action against one who forcibly ejects him. The whole theory and scope of the law is to prevent men from attempted vindication of their rights with their own hand. The act stands as conservator of the peace. It was designed to prevent the very scene which occurred in this case.

Defendants claimed and asserted a right to the possession of the "Gillis Opera House." That right was resisted by the plaintiff, who was actually in the bodily possession, and defendants thereupon proceeded to enforce that right with their own strong hand by turning him out "by the heels." Defendants claim that plaintiff was not in possession; that they were in exclusive possession and plaintiff was simply their agent. But this is a legal deduction, resulting from a construction of the law about which there seemed to be a violent difference of opinion. Plaintiff was in the actual occupancy of the building and claimed to be in the possession and defended such possession to the extent of putting defendants in fear of their lives. Defendants asserted their rights, as they conceived them to be, by bodily turning plaintiff out and changing the locks, that he might not get back. And thus was the contest and conflict which the forcible entry and detainer act was

designed to avoid. If defendants had the right to the possession of the house, they should have resorted to the law for its enforcement.

II.    Defendants, as I have said, claim that plaintiff, though bodily occupying, running, controlling, and managing the opera house, was doing so as their agent or servant, and, therefore, his possession was their possession, and they were, consequently, not guilty of a breach of the law in entering and turning him out.    Is this position tenable under the adjudications in this state? However wrongfully a possession may be obtained, it cannot be intruded upon, and a trespasser may maintain the action.    Authorities, *supra*.    If a trespasser, in this action, is protected by the statute, why is not an agent or servant also, who may assert his possession and resist intrusion?    If a servant or agent, who is in the exclusive bodily possession of a house, as distinguished from his legal right, resists the attempted entry of his master or principal, must such master or principal organize a storming party and capture the premises by bloodshed, if need be?    This question has been decided in *Ensly v. Bennett* (37 Iowa, 15), where the court says that, "It is immaterial, also, in what capacity or relation the plaintiff is in possession, whether as owner, tenant, agent, or as a mere trespasser.    It is the *fact* of possession alone that is material.    A person may render himself liable to an action of forcible entry and detainer by entering upon his own premises, even when he has the right to immediate possession."

The authorities to which defendants have especially called our attention are not forcible entry and detainer cases.    It is quite clear that one may successfully resist a suit in trespass, an action on a contract, or the like, and yet fail in a defence to forcible entry and detainer of the same property.    The forcible entry and detainer act is a law standing apart and bearing little analogy to other law.    Much has been said to show that the contract, in this case, did not create a tenancy, but one does not need to be a tenant to bring this action.

Most of the authorities, cited by defendants, are where the right of the defendant was involved, and are cases in which such *right* may be asserted. The case of *Chenowyth v. Mining Co.* (74 Mo. 173) was much relied upon at the argument, to support defendants' action in forcibly ejecting plaintiff from the premises. But that action was unlawful detainer merely, and was instituted under section 2420, Revised Statutes, where the question of right properly intervenes. Under that section the action can be maintained by the person having the legal right to the possession; whereas, under section 2419, the forcible entry and detainer section, the legal right is foreign to the issue. Besides, that case is based on a mining statute, specially applicable to an occupancy or possession such as was had by the plaintiff in that case.

As before stated, much of the argument was devoted to the question, whether the contract created the relation of landlord and tenant or master and servant. But whether plaintiff was a tenant or a servant cannot affect this case as it has been developed by the evidence. The contract, whatever else it may not have done, did put plaintiff in "charge and control and possession of the opera house." And it gave him "full and complete control of the house (to) run and manage the same for himself and in his own name." His possession of the house seems not to be limited, though, for the security of the reputation of the house and payments to defendants of their stipulated per cent., his control of the treasury, performances, and exhibitions, may have been. So if it should be conceded that plaintiff was mistaken as to his legal rights under the contract, yet it is certain he was occupying and claimed to be in possession of the house, as against defendants, and that he resisted them until overcome *vi et armis*. Objections made against the sufficiency of the affidavit are not deemed to be well taken.

The judgment is reversed and the cause remanded. All concur.