357 P.2d 611

J. J. CRAVIOLINI and L. C. Anderson Company, Inc., doing business as a joint venture, Appellants,

v.

SCHOLER & FULLER ASSOCIATED ARCHITECTS, an Arizona corporation, and Emerson C. Scholer and Santry C. Fuller, Appellees.

No. 6664.

Supreme Court of Arizona.

Dec. 21, 1960.

Rehearing Denied Jan. 10, 1961.

Nolen L. McLean, Tucson, for appellants.

Robert C. Stubbs, George B. Morse and James Elliott Dunseath, Tucson, for appellees.

Evans, Kitchel & Jenckes, Phoenix, amicus curiae.

PHELPS, Justice.

This is an appeal from a judgment in favor of defendants-appellees and against plaintiffs-appellants, hereinafter designated plaintiffs and defendants as they appeared in the trial court.

On December 16, 1954, the Board of Supervisors of Pima County acting for and as the Board of Trustees of School District No. 1 of said county, entered into a contract with defendants as architects to draw plans and specifications for a school building in said district, and covering architectural, structural, plumbing, heating, electrical and other mechanical work and other duties including the supervision of the work. The contract authorized payments to the building contractor at the times and upon the conditions therein specified. The architects were by supervision of the work to endeavor to guard the owner against defects and deficiencies in the work of the contractors.

Thereafter, on March 17, 1955, the board of supervisors again acting as and for the Board of Trustees of School District No. 1, entered into a contract with plaintiffs as joint venturers to construct such school building (now known as the Catalina High School) according to the terms of the contract, plans and specifications for the agreed sum of $2,424,900. The building contractors thereupon entered upon the construction of said building under the supervision of defendants and carried the work on to completion. Plaintiffs claim (as will be hereinafter more particularly set out) that defendants pursued a course of conduct toward them characterized as willful, intentional and malicious which resulted in great damage to them.

On November 16, 1957, plaintiffs filed an action for damages against defendants in

the Superior Court of Pima County and later filed an amended complaint in which they alleged, among other things, a conspiracy between Scholer and Fuller, architects, and their corporate entity, alleging that: the plans and specifications prepared by defendants did not make adequate allowances for expansion, contraction, deflection and camber and that when plaintiffs called their attention to such defects, defendants became enraged and thereafter maliciously, deliberately and intentionally undertook to bankrupt plaintiffs and to interfere with the contract relations between the plaintiffs and the board of supervisors, and that in seeking to induce a breach of such contract the defendants (1) issued contradictory instructions to plaintiff; (2) changed the plans and specifications without regard to the contractors added cost or time schedule; (3) required contractors, at their own expense, to cover up and conceal defendants' blunders and inherent defects in the original design; (4) delayed inspections called for in the contract between them and the board of supervisors resulting in exorbitant labor charges to plaintiffs which had to be borne by plaintiffs; (5) substituted materials called for in the contract for materials not specified therein; (6) interfered with the contractors in performing their duties by giving direct orders to subcontractors thereby preventing the contractors from integrating and coordinating the job; (7) arbitrarily refused to permit plaintiffs to use qualified subcontractors in certain phases of the work at added expense to the general contractor; (8) withheld funds due arbitrarily, long past the due date; (9) actively, bitterly and unsuccessfully opposed the payment over to the subcontractors through the general contractor of final balances due under the contract causing plaintiffs to spend large sums of money in attorneys fees to collect for their subcontractors monies due them, causing irreparable damage to plaintiffs' credit; (10) failed, neglected and refused to send into the board of supervisors and to the Home Finance Corporation, an agency of the Federal Government, plaintiffs' final claim and demand although requested repeatedly to do so (a) by plaintiffs (b) by the Board of Supervisors, and (c) by the Home Finance Corporation; (11) by means of false representation endeavored to induce plaintiffs' bonding company to take over plaintiffs' contract requiring plaintiffs to spend large sums of money to establish its competency to carry out its contract; (12) supplied the board of supervisors contract documents different from those executed between the board of supervisors and plaintiffs until March 22, 1957, resulting in confusion as to the respective rights of plaintiffs and the board, and delays in payments rendering the contract more difficult to perform, all to plaintiffs' damage; (13) after the job was completed, opposed payment to plaintiffs' subcontractors of the

balance due them with intent to injure plaintiffs' credit and their reputation; (14) advertised in Phoenix and Tucson newspapers requesting the presentation to the Pima County Board of Supervisors of any claims against plaintiffs; (15) for the further purpose of injury to plaintiffs compelled them to dismiss their most valuable man on the job, their project manager, all to their damage.

For the above alleged wrongs plaintiffs prayed judgment for $200,000 actual damages, and $250,000 punitive damages.

Defendants did not file an answer to either complaint, but instead filed motions to dismiss both complaints. The first motion to dismiss was granted allowing 15 days to amend. The motion to dismiss the amended complaint was supported by an affidavit signed by both Scholer and Fuller, setting up what they deemed to be pertinent portions of their contract with the board of supervisors, and in particular those parts which detailed the supervisory powers and duties of defendants in relation to the construction of such school building by plaintiffs.

■ The trial court ordered the amended complaint dismissed without right to amend and entered judgment for defendants. The ground upon which the amended complaint was dismissed and judgment entered thereon as announced by the court was that:

"an architect is an arbitrator or a quasi arbitrator and as such is immune from private actions against him for damages resulting from his actions as an arbitrator or quasi arbitrator."

The sole question before this court, therefore, is whether the defendants have judicial or quasi-judicial immunity against the claim stated by the complaint.

■ We have examined the many cases and annotations cited to us by both sides and by amicus curiae. The rule seems to be well settled that an architect who by agreement between the owner and the contractor is empowered to resolve disputes arising between them acts, in resolving such disputes, as a quasi-arbitrator. As a quasi-arbitrator he performs what is usually referred to as a "quasi-judicial" function—whatever that may mean—and is clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of his performance of his quasi-arbitrator's duties. With that rule we have no quarrel.

■ The difficulty is that that rule seems to us to have no application to this case. An arbitrator is just what his title implies: one who resolves a dispute between others. Where there is no dispute there is no arbitration, and no arbitrator. Toledo S. S. Co. v. Zenith Transp. Co., 6 Cir., 184 F. 391, 397, 106 C.C.A. 501; Sholz v. Mills, 176

**28**

Mo.App. 352, 158 S.W. 696, 701; Gonzales v. Gonzales, 174 Cal. 588, 163 P. 993. An architect may and undoubtedly often does act in his capacity as architect to settle differences arising in the course of a building's construction between the owner and the contractor. But he performs many other functions as well in carrying out his own contract with the owner. In performing those other functions he departs from his role as arbitrator.

█ The immunity in question here is one bestowed by public policy on those people who, by office or by contract, are called upon to act as judges. It is in every real sense a judicial immunity. It attaches to every act done in the judicial capacity, but to no other. Thus the architect has no immunity *as an architect;* immunity attaches only when he is performing those particular and limited functions which require the architect to act in the capacity of a judge. He may in the construction of a building assume many roles—planner, designer, supervisor, arbitrator and owner's agent. In the role of arbitrator, and in that role alone, goes the cloak of immunity. In applying this principle, the court must look to the allegations of the complaint against the architect. If the tortious conduct with which he is charged is connected with and arises out of his determination of an owner-contractor dispute, he is usually immune against the charge. If, on the other hand, that conduct is remote from and in no way associated with the performance of his arbitrator's function, he is liable for it in accordance with the usual principles of tort law.

An examination of this complaint shows that no single one of the many acts with which these architects were charged were done in their limited capacity of arbitrators. There is no showing that any controversy ever existed between the owner and the contractor, or that the architects were ever called upon to resolve any such controversy. They are charged, instead, with negligent, wilful and malicious conduct toward the plaintiff in matters wholly unconnected with any owner-contractor dispute, and about which the owner seems to have had no direct concern.

The complaint thus states a cause of action against these architects to which their claim of immunity is no defense. The judgment is therefore reversed, and the cause remanded to the trial court with instructions to reinstate the complaint.

STRUCKMEYER, C. J., and BERNSTEIN, PHELPS, UDALL and JENNINGS, JJ., concur.