**Mac J. CAHN and Sidney L. Schiro d/b/a Fashionality Blouses**

v.

**INTERNATIONAL LADIES' GARMENT UNION, Philadelphia Dress Joint Board of the International Ladies' Garment Workers' Union, Fashion Apparel Manufacturers of Philadelphia, William Ross and G. Allan Dash, Jr.**

**Civ. A. No. 30383.**

United States District Court
E. D. Pennsylvania.

March 13, 1962.

**192**

Geoffrey J. Cunniff, Philadelphia, Pa., for plaintiffs.

Joseph B. Meranze, Philadelphia, Pa., for Philadelphia Dress Joint Board.

Berthold W. Levy, Philadelphia, Pa., for G. Allan Dash, Jr.

Joseph S. Kleinbard, Philadelphia, Pa., for Fashion Apparel Mfrs.

Morris P. Glushien, New York City, for I. L. G. W. U.

VAN DUSEN, District Judge.

On November 29, 1956, the individual plaintiffs were the principal stockholders and owners of Sidele Fashions, Inc., a manufacturing company, and were members of the Fashion Apparel Manufacturers of Philadelphia (hereinafter called the "Association"). On that date, the Association and the defendant unions entered into a collective bargaining agreement which bound all employers then members of the Association. The contract ran from the above date to January 31, 1960. A dispute arose during the term of the contract between Sidele Fashions, Inc. and the Joint Board, one of the defendants in this case, and the Joint Board demanded arbitration under the terms of the contract.[1] Sidele challenged the jurisdiction of the arbitrator and the union brought an action to compel arbitration. Sidele, although conceding the validity of the appointment of defendant Dash as Impartial Chairman, argued that he was not impartial and that one or more of the contract provisions which the union sought to enforce were illegal. This court granted the union's motion for judgment on the pleadings and ordered Sidele to proceed to arbitration. See Philadelphia Dress Joint Board v. Sidele Fashions, Inc., 187 F.Supp. 97 (E.D.Pa.1960).[2] The matter was arbitrated and a decision handed down on July 19, 1961, by defendant Dash. See CCH 61-3 Arb.Par. 8701. Sidele not having complied with the terms of the decision, the union filed a suit, which is now pending in this court, to confirm the award. See Philadelphia Dress Joint Board v. Sidele Fashions, Inc., Civil Action No. 30256.[3]

---

1. See Articles I, II, XXXIX and XL of the contract attached to Document No. 14. Defendant Dash was added as Impartial Chairman by letters of February 19 and March 30, 1959.

2. It was also stated in that opinion that the allegation of partiality, even if true, was not material and that the time to consider the allegation of illegality of the contract would be in a suit to enforce the arbitration award. See 187 F.Supp. 97, 99 (E.D.Pa.1960).

3. The unions also filed charges against Sidele and the individual plaintiffs with the N. L. R. B., which found that the respondents there were guilty of violations of the National Labor Relations Act, as amended. See Sidele Fashions, Inc. et al. and Phila. Dress Joint Board, 133 N.L.R.B. No. 49 (1961). Since the order of the Board was not complied with, the unions have petitioned the U. S. Court of Appeals for the Third Circuit for modification of the order while the Board has filed suit for enforcement of its order. See Phila. Dress Joint Board v. N. L. R. B., 3rd Cir., No. 13767, and N. L. R. B. v. Sidele Fashions, Inc., 3rd Cir., No. 13830. These matters are now pending, briefs not having been filed to date with the Circuit Court.

This Complaint, which alleges violation of the anti-trust statutes, was brought by the individuals, who were the owners and principal shareholders of Sidele, doing business as "Fashionality Blouses." It is alleged that Sidele ceased to do business after October 31, 1960, and all of its assets were transferred to Fashionality Blouses, which has, since February 1960, been engaged in the manufacture, sale and distribution of ladies' blouses in South Carolina. The Complaint alleges that the defendants from November 26, 1956,[4] have engaged in an unlawful combination to restrain trade and to create a monopoly among themselves in the manufacture, sale and distribution in interstate commerce of ladies' apparel in violation of the anti-trust laws of the United States.

Defendant Dash has brought three Motions which are now before the court: a Motion to Dismiss, a Motion For More Definite Statement of Plaintiffs' Claim, and a Motion to Drop Defendant.

## I. *MOTION TO DISMISS*

Plaintiffs have stated that the action against defendant Dash is at present confined to paragraphs 12(h), (i) and (j) of the Complaint.[5] These sections allege that a combination and conspiracy existed, consisting of a continuing agreement and concert of action among all the defendants to:

"(h) Harass, unlawfully and improperly, manufacturers of woman's apparel in the Philadelphia area who were not members of the Association with the purpose of compelling said manufacturers to become and remain members of the Association.

"(i) Use the office of Impartial Chairman, filled since on or about February, 1959, by defendant G. Allan Dash, Jr. as an instrument of force and coercion to compel Plaintiffs and other Association members unlawfully to adhere to and maintain

contract provisions, customs and practices which were and are violations of the Statute Laws of the United States particularly the Sherman Anti-Trust Act and other Federal Statutes relating to monopolistic practices, thereby aiding, abetting and accomplishing the conspiracy alleged herein.

"(j) Procure and arrange for the Impartial Chairman to inflict heavy fines and penalties on Plaintiffs and others in order to prevent Plaintiffs and others from operating freely and economically in the market place."

The basis of Dash's Motion to Dismiss is that the Complaint fails to state a cause of action against him, since, as an arbitrator duly appointed and acting within his jurisdiction, he is immune from civil liability for all acts done in his capacity as an arbitrator.

A judge cannot be sued civilly for any act which he does in the performance of his duties,·even if the act was deliberate and malicious. Bradley v. Fisher, 13 Wall. 335, 347, 80 U.S. 335, 347, 20 L.Ed. 646 (1872); Allen v. Biggs, 62 F.Supp. 229, 230 (E.D.Pa.1945). It has been said that to impose civil liability on judges in the performance of their civil duties would produce utter chaos in the judicial system. Ginsberg v. Stern, 125 F.Supp. 596, 602 (W.D.Pa. 1954), aff'd. on other grounds, 225 F.2d 245 (3rd Cir.1955).

This rule of immunity extends to quasi-judicial officials and those so closely associated with the judicial process that their protection from harassment is necessary in order to protect the judicial process. See Cooper v. O'Connor, 69 App. D.C. 100, 99 F.2d 135, 141, 118 A.L.R. 1440 (D.C.Cir.1938); Hohensee v. Goon Squad, 171 F.Supp. 562, 568, 569 (M.D. Pa.1959).

Defendant Dash was the arbitrator who presided over the charges against

---

4. This is the date on which the contract mentioned above was signed.

5. See letter of January 8, 1962, from counsel for plaintiffs, which has been attached to plaintiffs' brief (Document No. 16).

Sidele and the defendant unions.[6] There is no allegation that he was not properly appointed or that, in deciding the pertinent matter before him involving Sidele, he acted outside his jurisdiction.[7]

It has been held that an arbitrator is not liable in a civil action for damages for an award alleged to have been made by him fraudulently and corruptly. See, e. g., Jones v. Brown, 54 Iowa 74, 6 N. W. 140 (1880). It was stated in Hoosac Tunnel Dock & Elevator Co. v. O'Brien, 137 Mass. 424 (1884), at page 426:

"An arbitrator is a quasi judicial officer, under our laws, exercising judicial functions. There is as much reason in his case for protecting and insuring his impartiality, independence, and freedom from undue influences, as in the case of a judge or juror. The same considerations of public policy apply, and we are of opinion that the same immunity extends to him."[8]

■ The fact that this arbitrator was not court-appointed is not controlling. If one is appointed by agreement of parties to act as arbitrator and is empowered to resolve disputes between them, he is, in so acting, performing a "quasi-judicial" function and is clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of the performance of his duties. See Craviolini v. Scholer & Fuller Associated Architects, 89 Ariz. 24, 357 P.2d 611, 613 (Sup.Ct. of Arizona, 1960).

Therefore, if this action is one for damages based on the actions of the arbitrator while acting in his quasi-judicial capacity, the Motion should be granted. The fact that it is couched in other terms or allegations should not change this holding if, in fact, the action is one which the courts have determined should not be permitted to be brought against an arbitrator.

■ It appears clear from the Complaint that paragraphs 12(i) and (j) refer to allegations against Dash in his capacity as arbitrator. 12(i) states that the defendants used the office of Impartial Chairman as an instrument of force and coercion and 12(j) alleges that the defendant procured and arranged for the Impartial Chairman to inflict heavy fines and penalties on plaintiffs and others to prevent them from operating freely and economically in the market place. Therefore, the Motion will be granted insofar as it pertains to these two paragraphs.

## II. MOTION FOR A MORE DEFINITE STATEMENT

■■ The only other charge alleged in the Complaint against defendant Dash is contained in paragraph 12(h), which speaks of harassing the manufacturers with the purpose of compelling them to become and remain members of the Association. The Complaint, argument of counsel for plaintiffs, and the brief filed by plaintiffs contra the instant Motions do not reveal that the plaintiffs allege any connection between the alleged conspiracy and the arbitrator except the use of his quasi-judicial office. If this allegation is based on the charge that Dash "harassed" by means of the decisions handed down as arbitrator, this paragraph would be subject to the Motion for Dismissal, as are paragraphs 12(i) and (j).

6. The contract calls the arbitrators the "Impartial Chairman" and "Associated Impartial Chairman," but these titles do not affect the nature of the position.

7. The parties have stipulated that Dash was duly appointed Impartial Chairman in accordance with the terms and provisions of the collective bargaining agreement (see Document No. 14).

8. See, also, Babylon Milk & Cream Co. v. Horvitz, 151 N.Y.S.2d 221 (Sup.Ct. Suffolk County, 1956), where the court said at page 224:
"* * * the same rule of immunity should apply to arbitrators as applies to the judiciary, inasmuch as the same reasons of public policy are applicable. If arbitrators are to be distinguished from jurists in this respect, a blow would be dealt to the cause of arbitration which is unwarranted. In view of the foregoing I hold that the defendant arbitrator cannot be sued for alleged misconduct in the arbitration proceeding."

However, this paragraph, as it now reads, could be construed to allege that Dash "harassed" in other ways which would not be protected by the immunity referred to above. Therefore, this paragraph will be dismissed unless the plaintiffs file a more definite statement of their contentions as to Dash in an Amended Complaint filed within thirty days. The granting or denial of a motion for a more definite statement rests in the sound discretion of the court [9] and the court is of the opinion that justice would be best served by requiring the plaintiffs to file a more definite statement of what is contemplated by paragraph 12(h) insofar as it relates to defendant Dash in order to preserve their action against him. After this is filed, defendant Dash may file another Motion to Dismiss this paragraph if it appears appropriate.[10]

### III.  *MOTION TO DROP*

■ Without citing any cases, defendant Dash alleges that this Motion should be granted because the issues of law are different as to the action against the other defendants and the one which has been brought against him. Further, he alleges that if his case and the action against the other defendants were tried together, it would really involve a trial within a trial and would be confusing and expensive. The position of Dash is not sustained. If the actions of the various defendants are part of one conspiracy, there is a common question of fact or law involved. Also, if Dash is still a defendant of record at the time that this case is scheduled for a pre-trial conference, he could move to sever the action against him from the action involving the other defendants for a separate trial. See F.R.Civ.P. rule 42(b), 28 U.S.C.A. It would not be appropriate at this time to grant this Motion.[11]

9.  See 6 Toulmin, Anti-Trust Laws, § 17.-20, p. 536 (1951).

10. If plaintiffs have changed their position and now claim that any other section of the Complaint refers to Dash and does not involve any activities of his which are protected by quasi-judicial immunity, they may submit such contentions in the

*ORDER*

And now, March 13, 1962, after consideration of the above Motions (see Document No. 7), oral argument, the briefs of counsel with attached letters (Documents Nos. 15 and 16), and the record, it is ordered that:

(a) the Motion of G. Allan Dash, Jr. to dismiss the Complaint against him is granted in part, and paragraphs 12(i) and (j) are dismissed as to this defendant;

(b) the Motion of G. Allan Dash, Jr. for a more definite statement of plaintiffs' claim is granted insofar as it relates to the claim against Dash in paragraph 12 (h), and defendant Dash may submit an order to dismiss the action as to him if an amended paragraph 12(h) is not filed within thirty days; and

(c) the Motion of G. Allan Dash, Jr. to drop him as a defendant is denied.

more definite Complaint if they file such Complaint.

11. The very complete brief of defendant Dash, to which has been stapled his counsel's letter of January 3, 1962, has been docketed as Document No. 15 in the Clerk's file.