139 Ariz. 190 (1983)
677 P.2d 1298
DONNELLY CONSTRUCTION COMPANY, an Arizona corporation, Plaintiff-Appellant,
v.
OBERG/HUNT/GILLELAND, Architects, Defendants-Appellees.
No. 1 CA-CIV 5551.
Court of Appeals of Arizona, Division 1, Department C.
May 17, 1983.
Rehearing Denied July 28, 1983.
Review Granted September 27, 1983.
*191 O'Connor, Cavanagh, Anderson, Westover, Killingsworth and Beshears, P.C. by Larry L. Smith, Charles J. Muchmore, Phoenix, for plaintiff-appellant.
Jennings, Strouss & Salmon by Jefferson L. Lankford, Phoenix, for defendants-appellees.
OPINION
JACOBSON, Presiding Judge.
We are asked in this case to reassess whether an architect's liability in tort for negligent preparation of plans and specifications is limited to those individuals with whom the architect has contractual "privity". In particular, does a contractor who relies upon those allegedly defective plans in submitting bids to an owner have a cause of action in negligence against the architect?
Since this matter was disposed of on a motion to dismiss for failure to state a claim for relief, the pleadings determine the facts. Appellant, Donnelly Construction Company (Donnelly) brought an action against Page School District No. 8 (Page School) and appellees, Oberg/Hunt/Gilleland Architects, Inc. (Architects) for damages arising out of a construction project in which Donnelly, as the contractor, was to perform site improvements at Page School.
Page School employed the Architects to prepare plans and specifications in connection with the site improvement and these plans and specifications were provided to prospective contractors for bidding purposes. Donnelly alleged that it relied on these plans and specifications in submitting its bid to perform the contemplated construction. It further alleged that as a result of the errors in the plans and specifications it incurred additional costs beyond the contract bid price. It is not contended that Donnelly's cause of action against the Architects did not sound basically in negligence and sought to collect from these Architects its pecuniary losses proximately caused by the alleged errors.
The Architects filed a motion to dismiss or in the alternative a motion for summary judgment. The gist of the motion to dismiss was that Donnelly's complaint failed to state a cause of action against the Architects as the Architects owed no duty to Donnelly as a contractor, its duty being limited to those with whom it had a contractual relationship, in this case, Page School. In essence, the Architects argued that since there is a lack of privity between itself and the contractor, it owed no duty to the contractor and therefore was not liable in negligence to it.
*192 The alternative motion for summary judgment took somewhat a different tack, that is, that the Architects undertook to prepare plans and specifications only for conformance with the design concept of the project and not to verify its accuracy, and that Donnelly was to verify by its own tests and investigation the conditions of the job site. This concept was supported by an affidavit attached to the motion from Kenneth I. Oberg, president of the Architects.
The trial court granted the motion to dismiss the complaint as to the Architects[1] for "failure to state a cause of action upon which relief can be granted and pursuant to Rule 12(b)(6) of the Arizona Rules of Civil Procedure...."
Before reaching the merits of this matter, we need to define what issues are properly before us on appeal. The Architects argue that since they supported their motion to dismiss by the Oberg affidavit, and Donnelly did not controvert that affidavit, the trial court's action in dismissing the complaint can be supported as the granting of a motion for summary judgment by the resolution of the uncontested factual issue presented by the Oberg affidavit.
We disagree. It is apparent that the trial court did not treat this motion as one for summary judgment. Not only is the trial court's order specific in granting the motion to dismiss on the basis of Rule 12(b)(6), Rules of Civil Procedure, it did not rule on Donnelly's motion for a continuance in order to present evidence to support a response to the motion for summary judgment at the urging of the Architects that a continuance was unnecessary because the motion could be disposed of by the grounds raised for dismissal. We thus have clearly before us the issue of whether the trial court was legally correct in granting the motion to dismiss Donnelly's complaint sounding in negligence because of a lack of privity between Donnelly and the Architects.
The Architects argue that the issue of whether a contractor has a cause of action against an architect, in absence of contractual privity, has been decided in Arizona in the case of Blecick v. School District No. 18 of Cochise County, 2 Ariz. App. 115, 406 P.2d 750 (1965). In Blecick, a contractor, who had been awarded a contract to build improvements for a school, sued both the school district and the architects alleging that because of errors in the architect's plans and specifications, problems developed in the construction work and as a result the architect refused to certify completion and the school district refused to pay the balance of the contract price. While the gravamen of the contractor's complaint is somewhat unclear, Division Two of this court framed the issue thusly:
Is an architect liable to a contractor for the preparation of defective plans and specifications?
2 Ariz. App. at 119, 406 P.2d at 754.
In holding that such liability did not exist, the court stated:
There is no privity between plaintiffs and the architects by virtue of the first contract nor are plaintiffs third-party beneficiaries thereof. The obligations of performance due thereunder by the architects are owed solely to the School District and only the School District can assert claims for breach of said contract.
* * * * * *
The mere co-existence of the two contracts with one contracting party (the School District) common to both, does not give the plaintiffs a right to enforce obligations owned by the architects to the School District.
2 Ariz. App. at 120, 406 P.2d at 755.
While, as indicated, the contractors' cause of action in Blecick is unclear, it appears that the Division Two holding requiring privity between the architect and the contractor is as equally applicable to tort actions by the contractor as it is to actions for breach of contract. See Harbor *193 Mechanical, Inc. v. Arizona Electric Power Cooperative, Inc., 496 F. Supp. 681 (D.Ariz. 1980).
Donnelly's attack on the Blecick holding is double barrelled. First, it is contended that the Blecick holding is directly contrary to the Arizona Supreme Court's decision in Craviolini v. Scholer & Fuller Associated Architects, 89 Ariz. 24, 357 P.2d 611 (1960). In particular, Donnelly relies on the following statement in Craviolini:
Thus the architect has no immunity as an architect; immunity attaches only when he is performing ... in the capacity of a judge.
89 Ariz. at 28, 357 P.2d at 614 (Emphasis in original).
From this statement, Donnelly urges that it is only when the architect is acting in its quasi-judicial capacity to settle disputes under the contract that it is immune from liability for its actions and that when not so acting in this capacity, it is liable to the contractor. Since Donnelly does not seek to impose liability for the Architects acting in a quasi-judicial function, it is contended under Craviolini, the Architects are liable to the contractor. While it is true that in Craviolini, the Supreme Court held that the acts of the architect gave rise to liability to the contractor, it is important to isolate the acts of the architect for which liability was imposed. In Craviolini, the contractor alleged that the architect undertook a course of action to "maliciously, deliberately and intentionally ... bankrupt plaintiffs and to interfere with the contract relations ... to induce a breach of such contract" between the contractor and the owner. 89 Ariz. at 26, 357 P.2d at 612. The architect defended on the basis that because of their "quasi-judicial" immunity in settling disputes under the contract, the contractor had no cause of action. The Supreme Court correctly held that this quasi-judicial immunity had no application to the acts of the architect for which liability was sought. Rather, it appears that the acts of the architect in that case would have given rise to liability even if they were not architects. The malicious interference with contractual relations had no relationship to the contractual duties imposed by the architect-owner contract. The result in Craviolini would have been the same if the contractor had sued the architect for negligently driving its automobile into the contractor causing injuries.
However, here, as in Blecick, the contractor does not seek to impose liability upon the architect for acts de hors the contract, but rather the sole liability of the architect stems from its negligent performance of its contractual obligations  to use due care in the preparation of plans and specifications. Thus, we determine that Blecick is not contrary to the Supreme Court's holding in Craviolini.
Donnelly's second attack on Blecick, is that if that case holds that an architect is not liable to a contractor for negligent preparation of plans and specifications, in absence of privity of contract between the two, this holding should be reexamined. We will now undertake to do so.
The concept of the necessity for privity in tort actions based upon breach of contractual obligations arose from the 1842 case of Winterbottom v. Wright, 10 M & W 109, 152 Eng.Rep. 402 (1842). That case involved an action by a passenger who was injured when a mail coach collapsed against the individual who had a contract to keep the mail coach in repair. The court held that a cause of action did not exist because of lack of contractual privity between the passenger and the repairman. As stated by Lord Abinger, C.B.:
There is no privity of contract between these parties; if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties ... the most absurd and outrageous consequences, to which I can see no limit, would ensue.
152 Eng.Rep. at 405. Quoted in Hanson v. Blackwell Motor Co., 143 Wash. 547, 255 P. 939 (1927).
*194 While Lord Abinger's hypothesis is perfectly correct in analyzing contractual obligations and duties, his reasoning has been criticized when analyzing tort obligations and duties. See Bohlen, The Basis of Affirmative Obligations In the Law of Tort, 53 Am.L.Reg. 209, 273, 337 (1905). The basis of tort liability is not that the plaintiff assumes a particular obligation towards a particular plaintiff, as is in the case of contract, but that it is in the best interest of society in general to protect certain interests from various kinds of harm. Professor Prosser aptly illustrates this distinction between contract liability and tort liability:
If the defendant undertakes, for a consideration, to pay money to X, and fails to do what he has promised, there is an actionable wrong, not because the law obliges people to make such payments in general, but because he has manifested his consent to assume the obligation toward X alone. The action in such a case is in contract. But if A negligently runs B down with his automobile, a cause of action arises, not because of any promise to refrain from the commission of the act, but because the law imposes upon A a duty, owed to anyone in his path, to refrain from inflicting such injuries. The remedy in such case is in tort.
Prosser, Law of Torts 613 (4th Ed. 1971).
Since the basis of liability in contract (personal assumptions of obligations to contracting parties alone), differs from the theory of liability in tort (societal imposition of standards of care), the persons who may seek enforcement of the breach of these duties imposed must also differ. While it is reasonable to allow only those individuals who enter into contracts to enforce the mutual personal obligations assumed and flowing therefrom, society's interest in enforcing its standards of care cannot be so limited. Under such a law imposed obligation, the question is not whether the defendant limited the sphere of his obligations, but whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. See Green, The Duty Problem in Negligence Cases, 28 Col.L.Rev. 1014 (1928). This concept in negligence actions is usually expressed in the terms of whether or not the defendant owed a duty of due care to the plaintiff. See Powder Horn Nursery, Inc. v. Soil & Plant Laboratory, 119 Ariz. 78, 579 P.2d 582 (App. 1978).
For our purposes here, this duty may be expressed in the terms of the foreseeable plaintiff. In summary then, those who may enforce contractual liability are properly limited to those with "privity" to the contract, while those who may enforce tort liability are limited to their foreseeability.
With these distinctions in mind, we turn to the problem before us  can a defendant who has assumed a personal obligation under contract by that act assume a duty to others not a party to that contract? In the abstract, assuming the previous analysis is correct, the answer is yes  by entering into a contract with one, the defendant may place himself in such a relationship with another that the law will impose upon the defendant an obligation to act in such a way as not to injure that other. The fact that a contract exists does not, in and of itself, negate the responsibility of the defendant for affirmative conduct which may reasonably be expected to affect the interests of another person. Prosser, supra, at 622. The seller/manufacturer strict liability concepts are easy illustrations of this principle. See Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967).
We therefore conclude that if Blecick stands for the proposition that a defendant's duty for acts which were originally imposed by contract is always limited to those who are in privity to that contract that proposition is based upon fallacious reasoning.
To whom then does the duty flow in order to avoid the "Pandora's Box" argument articulated in 1842 by Lord Abinger in Winterbottom v. Wright, supra? While this answer may well turn on the interest which society seeks to protect (see Miller v. *195 DeWitt, 59 Ill. App.2d 38, 208 N.E.2d 249 (1965) reversed on other grounds, 37 Ill.2d 273, 226 N.E.2d 630 (1967) (analyzing the liability of an architect for personal injury suffered by a collapse of a proof due to faulty design)) we believe that both the interest to be protected and the liability safeguards contained in Restatement (Second) of Torts § 552 (1977) adequately answers this question. This section provides:
§ 552 Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient so intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
As can be seen, the supplier of information (here the architect) can be liable not only to the recipient who employed the supplier (the school district) but also to the limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it (the contractor) Restatement (Second) of Tort, supra, comment g, illustration 9, at 135 is pertinent to our discussion here:
The City of A is about to ask for bids for work on a sewer tunnel. It hires B Company, a firm of engineers, to make boring tests and provide a report showing the rock and soil conditions to be encountered. It notifies B Company that the report will be made available to bidders as a basis for their bids and that it is expected to be used by the successful bidder in doing the work. Without knowing the identity of any of the contractors bidding on the work, B Company negligently prepares and delivers to the City an inaccurate report, containing false and misleading information. On the basis of the report C makes a successful bid, and also on the basis of the report D, a subcontractor, contracts with C to do a part of the work. By reason of the inaccuracy of the report, C and D suffer pecuniary loss in performing their contracts. B Company is subject to liability to B (sic) and D.
In our opinion, § 552 of the Restatement (Second) is the proper application of liability in this case and is so adopted. See Arizona Title Insurance and Trust Co. v. O'Malley Lumber Co., 14 Ariz. App. 486, 484 P.2d 639 (1971). If Donnelly can prove that the architect supplied information pursuant to the limitations set forth in § 552 of the Restatement (Second), the fact that they have no contractual privity with the Architect will not prevent the imposition of liability.
Before leaving this subject, reference must be made to Phoenix Title & Trust Co. v. Continental Oil Co., 43 Ariz. 219, 29 P.2d 1065 (1934). In that case, an action was brought by a purchaser of property against an abstractor of titles who had supplied an abstract to the seller. The court found as a matter of law that the abstractor was negligent in preparing the abstract of title upon which the buyer relied in purchasing the property. However, the Supreme Court held that in absence of privity of contract between the purchaser and the abstractor, no cause of action existed. *196 However, in Phoenix Title the abstractor had no knowledge of the specific purpose for which the abstract was desired or that it was to be furnished to any particular person or groups of persons. It was on this determinative fact that no liability was found. This is not inconsistent with The Restatement (Second) of Torts, § 552, adopted here. As comment h to that section makes clear, liability is imposed upon the supplier only to those persons the supplier knows will use the information for their benefit and guidance. However, "[i]t is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." Id. at 133.
The judgment of the trial court dismissing Donnelly's complaint for failure to state a cause of action is reversed and the matter remanded for further proceedings.
BROOKS and OGG, JJ., concur.
NOTES
[1] The action by Donnelly against Page School was unaffected by the trial court's action and Page School is not a party to this appeal.