[No. 10809.   Department One.   March 12, 1913.]

NORTHWESTERN MARBLE & TILE COMPANY, *Plaintiff*, v.
JOHN MEGRATH *et al.*, *Respondents*, JOHN
J. WARD *et al.*, *Appellants.*[1]

CONTRACTS—BUILDING CONTRACTS—SPECIFICATIONS—CONSTRUCTION.
Specifications of a contract for plumbing, requiring best quality
"galvanized wrought iron or mild steel" pipe, confer an option upon
the contractor to use either "galvanized wrought iron" or "mild
steel."

CONTRACTS — CONSTRUCTION — POWERS OF SUPERVISING ARCHITECT.
The supervising architect for the construction of a Federal building,
under a contract making his decision as to the proper interpretation
of the specifications final and conclusive, has no power to require
the use of "galvanized wrought iron" pipe, where the contract plain-
ly gave the contractor the option to use "mild steel" pipe.

PARKER, J., dissents.

Appeal from a judgment of the superior court for King
county, Main, J., entered August 6, 1912, upon findings
in favor of certain defendants, in an action on contract.
Reversed.

*John W. Roberts*, for appellants.

*Million & Houser* and *George Friend*, for respondents.

GOSE, J.—The respondents Megrath and Duhamel had a
contract for the construction of the Federal building, in
the city of Seattle.   The appellants Ward and Scherer made
a subcontract with them for the installation of the plumbing.
The specifications, which formed a part of both the original
and subcontract, contained the following provision:   "All
soil, waste, drain, down water, and vent pipe (unless other-
wise specified) must be best quality galvanized wrought iron
or mild steel screw-jointed pipe of standard weight and
thickness."   The original contract provided that:   "The
decision of the supervising architect as to the proper inter-

[1]Reported in 130 Pac. 484.

pretation of the drawings and specifications shall be final and conclusive." The contract further provided that all defective or unsatisfactory material or work ·should be remedied and removed at the expense of the contractors. Under the clause first quoted, the subcontractors, with the knowledge and approval of the superintendent in charge of the work and the respondents Megrath and Duhamel, installed "mild steel" pipe. After its installation, it was tested and approved by the superintendent of the work. The appellants, the respondents, and the superintendent of the work, construed the clause to give the contractor the option to install either "galvanized wrought iron" or "mild steel pipe." After the installation of mild steel pipe, the supervising architect directed the respondents to remove it and to install "galvanized iron pipe." The respondents in turn called upon the appellants to make the substitution; and upon their refusal so to do, the respondents made the change as directed, and now claim that the appellants should bear the expense thereof. Their claim was sustained in the court below, and this appeal followed.

The clause in controversy clearly confers an option upon the contractor to use either "galvanized wrought iron" or "mild steel." In other words, it specifies two kinds of pipe, with the option to the contractor to use either. The testimony shows that the words "mild steel" mean ungalvanized steel. The language in the specification quoted seems too plain to require construction further than to ascertain the meaning of the words "mild steel." When the appellants properly installed mild steel pipe of standard weight and thickness, they did all they had contracted to do, and the supervising architect had no warrant under the terms of the contract to arbitrarily direct them to remove it and install galvanized iron pipe. *Camp v. Neufelder*, 49 Wash. 426, 95 Pac. 640, 22 L. R. A. (N. S.) 376; 9 Cyc. 617, 618.

The respondents rely upon the clause which provides that the decision of the supervising architect as to the proper

interpretation of the specifications shall be "final and con-
clusive." This clause did not warrant him in interpolating
something into the contract not justified by any fair inter-
pretation of its terms. In short, it did not justify him in
requiring the parties to do that which the contract itself did
not require. The power reserved to the supervising archi-
tect was to interpret the specifications, not to rewrite them.

The judgment is reversed, with directions to enter a
judgment in harmony with this opinion.

CHADWICK and MOUNT, JJ., concur.

CROW, C. J., concurs in the result.

PARKER, J. (dissenting)—I dissent. Respondents' orig-
inal contract was with the United States government.
Hence they were helpless as against the demands of the
supervising architect, so far as legal procedure is concerned.
Appellants, as subcontractors, by the terms of their contract
subjected themselves to the same hazard, and should not be
permitted to recover from respondents for work under their
subcontract which respondents cannot recover for under their
original contract.