REINHART CONSTRUCTION COMPANY ᴇᴛ ᴀʟ. *v.*
MAYOR AND CITY COUNCIL OF BALTIMORE.
[No. 1, April Term, 1929.]

*Decided June 24th, 1929.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, and PARKE, JJ.

*Hyland P. Stewart,* submitting on brief, for the Reinhart Construction Company.

*J. Kemp Bartlett* and *Robert D. Bartlett,* for the United States Fidelity and Guaranty Company.

*Allen A. Davis, Assistant City Solicitor,* with whom was *A. Walter Kraus, City Solicitor,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

A contractor for paving certain public alleys in Baltimore City, and its surety on the contract, appeal from a judgment against both, in favor of the city, for the cost of repairs made to the work by the city within five years after completion. Exceptions to rulings on evidence and to rulings on prayers for instructions raise three main questions.

The contract was for paving, with concrete, sections of fifty-six specified alleys, and, subsequent to its execution,

and to the execution of the bond, the highways engineer of the city asked the contractor informally, in letters, to add to the contract the paving of twelve other specified alleys, and the contractor consented to do so, and did the additional paving. This informal agreement for additional paving was unknown to the surety. It is clear, and not disputed, that the contract itself did not contemplate and provide for the addition of work in entirely different alleys. By the terms of the contract, the work was to be guaranteed and kept in repair by the contractor for a period of five years from the date of its acceptance by the city. And defects from erosion and otherwise having appeared in the surface of some of the alleys during the five-year period, the city called upon the contractor to make the repairs, and, the contractor having refused, did the work by its own agencies; and the present suit and judgment against the contractor and its surety for the cost have resulted. The extension of the contract to the twelve additional alleys, and any liabilities in connection with the work in those alleys, were excluded from consideration at the trial, and the judgment is confined to the cost of the repairs in alleys specified in the original contract.

The surety contends, first, that whatever may be the liability of the principal contractor, the surety has been released from all liability on the original contract by the agreement to add the work on the other alleys. *United States v. Poe, et al., Receivers,* 138 Md. 466; *Miller v. Stewart,* 9 Wheat. 680; *Equitable Surety Co. v. United States, to the use of McMillan,* 234 U. S. 448, 457. That agreement did not, however, alter or extend the work under the original contract in any respect, but, as has been stated, was concerned with entirely new, separate work, the doing of which could not affect the original work. While in words the principal parties were including new work under the original contract, they were making a new use or application of that contract which amounted to a new contract—putting aside questions of the validity of their action which have been argued—a new contract which had no connection with the surety's undertaking. Neither the principal's undertaking under the

original contract nor that of the surety was altered at all. And in the opinion of this court it could not reasonably be held that there was an alteration in the principal contract which might release the surety, under the rule of law invoked. The prayers of the surety upon the opposite theory were properly refused, and the court correctly excluded from consideration of the jury the letters between the highways engineer and the contractor to make the additions.

A second objection is to the exclusion from consideration of a defense that the contractor was not obliged to repair the effects of erosion, which was not due to inferiority in the materials or the work, but to disintegrating liquids which it was not in the nature of the concrete specified to withstand. Testimony was offered to prove that adjacent houses or yards, not provided with sewer outlets for it, discharged upon the surface of the alleys water containing alkaline washing compounds or other substances which would and did disintegrate concrete, and that, in comparison, alleys into which these liquids were not discharged did not show similar erosion. Generally, when a contract prescribes materials chosen entirely by the owner or engineer, and the contractor has no choice in respect to them, the contract cannot be construed to impose on the contractor an undertaking that the materials chosen will meet the demands to be made upon them. *United States v. Spearin,* 248 U. S. 132, 136; *Bentley v. State,* 73 Wis. 416; *Southgate v. Sanford & Brooks Co.,* 147 Va. 554, Even a general guaranty of good condition during a period subsequent to completion has been construed not to include liability for mistake or miscalculation in an architect's plans. In *MacKnight Flintic Stone Co. v. New York,* 160 N. Y. 72, 84, it was held that an undertaking to build a water-tight underground room and turn the work over "in perfect order and guaranteed absolutely water and damp proof for five years," did not include a guaranty of the sufficiency of the architect's plan, but included only one of the quality of material and workmanship according to that plan. "Parties," said the court, "might make such an agreement, but if the language used admitted of a different construction the

courts would be apt to adopt it and thus avoid the conclusion that an impossible result was intended." See *contra, Lake View v. MacRitchie,* 134 Ill. 203. The parties may agree upon the broader guaranty. *Hills v. Farmington,* 70 Conn. 450; *Friederick v. County of Redwood,* 153 Minn. 450. But it is not an intention that would be expected, or be reasonably inferred from a general guaranty of work to be done.

The clause in this contract reads: "All work to be done under this contract must be guaranteed and kept in repair by the contractor for a period of five years from the date of its acceptance by the Highways Engineer. This guaranty includes all maintenance and repairs necessary to keep the work in a first-class condition, and shall include the making good of all defects except such as are occasioned by opening in or tunneling under the street which are provided for in Paragraph 48. If in the judgment of the Highways Engineer repairs or renewals become necessary under this paragraph, then upon notice from the Highways Engineer, at any time during the guaranty period, to the contractor, said repairs or renewals shall be promptly made and at the expense of the contractor, who shall take out and remove all soft, inferior or defective materials found in any of the work done by him, and replace the same with good and acceptable materials, and do all work necessary to put such pavement in first-class condition."

Our opinion is that this clause does not impose upon the contractor a guaranty of the suitableness of concrete for the liquids flowing into the alleys, and that if the contractor and surety should be able to establish as a fact that perfect concrete of the mixture specified, perfectly laid as specified, would not withstand the liquids poured over it in this instance, then there would be no liability under the guaranty clause for the cost of repairs to erosion from that source. The guaranty is broadly worded, and is presumably intended to avoid controversies on defects during the period, but when we consider that the wording was prepared by the city, and that the fair and proper construction is that which a contractor might be supposed to place upon it reasonably, we

come to the conclusion that it must be construed to cover only the results of insufficiency in materials and workmanship to stand the wear which concrete as specified can stand. We think the trial court erred, therefore, in the rulings to the contrary. It is unnecessary to enumerate the exceptions included within this group, except to say that the evidence referred to in the first and fifth exceptions was inadmissible because it was made up of statements of city employees whose oral representations would not bind the city, and would not affect a written contract.

A third question, on behalf of both appellants, results from a use by the city of vitrified bricks instead of concrete in repairing the flow lines in some of the alleys. There was evidence tending to prove that paving with bricks was generally more expensive than paving with concrete, and the appellants contend that their liability, if any exists, for the cost of repairs, is limited to the cost of repairing with concrete, that they could not be held liable at all for the cost of repairs with bricks, and that if the cost of repairing with concrete is, in any event, the measure of their liability, then there is a lack of legally sufficient evidence to show what that cost would have been. Testimony on behalf of the city, on the other hand, was to the effect that repairing concrete pavements presents a problem different from that of original paving, that repairing concrete with bricks is much cheaper, as well as more serviceable, that in this instance about three-fourths of the bricks used were old bricks owned by the city, and no charge had been made for those in the bill of costs against the contractor. Witnesses for the appellants disputed the testimony that the use of bricks would be cheaper, thus leaving an issue for the jury on the point of fact. The contention that the contractor could be held liable for the cost of repairs by the city only if the repairs were made in concrete throughout seems to be answered by the fact that, upon the contractor's refusal to make repairs, he and the surety, if they became liable at all, become liable for a sum of money. They were without interest in the use of that money in repairs by the city, so long as the amount charged against them did

not exceed the cost of restoring the condition of the alleys as they would have been when properly paved in concrete. Whether the amount did or did not exceed that limit of liability was a question on which there was a difference of testimony and which was therefore one for the jury on the evidence given them; and we think the court properly left the question to the jury. The rejection of the third, fifth, sixth, seventh, eighth and ninth prayers for instructions contrary to the conclusion here stated was proper.

The second, fourth and fifteenth exceptions to rulings on evidence offered in accordance with this view cannot be sustained. We find no error in rulings on evidence not included in those on the three main questions stated above.

For error found in the rulings on the appellants' contention that they would be free of liability for defects resulting from unsuitableness of concrete for service in the alleys, the judgment must be reversed.

*Judgment reversed with costs to the appellants, and a new trial awarded.*