[Civil No. 4391.   Filed March 16, 1942.]

[123 Pac. (2d) 169.]

HAROLD W. AIKEN, Appellant, v. LENA PROTIS, Appellee.

Messrs. Lewkowitz & Wein, for Appellant.

Mr. W. L. Barnum, and Mr. R. H. Brumback, for Appellee.

LOCKWOOD, C. J.—Harold W. Aiken, plaintiff, brought suit against Lena Protis, defendant, on three causes of action. The first was for a balance alleged to be due on a conditional sales contract made between defendant and Bakery Service Company, a corporation, called the company, and by it assigned to plaintiff. The second was upon an open book account, and the third for goods sold and delivered. Presumably what plaintiff endeavored to do was to state the same transaction in three ways, for the amount alleged to be due under each cause of action was identical to the cent.

Defendant answered, and as to the first cause of action denied entering into any valid contract whatever with the company, and denied the assignment or any indebtedness on the contract. Answering the second and third causes of action, she denied any indebtedness on book accounts or for goods sold or delivered, and set up as a further defense that she and her deceased husband, Joe Protis, had, in 1935, entered into a conditional sales contract with plaintiff and the company, which had been fully paid and satisfied.

Defendant then cross complained and set up an action of fraud. The facts alleged were, in substance, as follows: That in June, 1935, she and her deceased husband had entered into a conditional sales contract with plaintiff and the company for the purchase of certain bakery machinery at an agreed price, which had been fully paid and satisfied by 1937, at which time her husband died. A few days later plaintiff falsely and fraudulently represented to defendant there was still due on said contract the sum of $1,800, and by this statement and threats of repossession of the property induced plaintiff to sign a contract

wherein she agreed to pay said sum herself. Thereafter she paid to plaintiff a considerable sum of money under her contract, notwithstanding which he took the bakery equipment in question and sold it to another party. She alleged that the payments made, when none were due, and the value of the property taken amounted to $2,592, and prayed judgment for that amount.

The case came on for trial before a jury, and after considerable evidence had been put in by plaintiff, he abandoned his second and third causes of action, and proceeded on the first. It shortly appeared from plaintiff's testimony that while the contract declared upon on its face was made with the company, it had never been assigned to plaintiff. He endeavored to explain this by claiming that the original contract had been made directly with him, but by inadvertence he had placed the name of the company, instead of his own, therein, stating that the connection between himself and the company was so intimate that he had forgotten this fact until it was brought to his attention in court.

The court promptly stated to counsel for plaintiff that under such testimony no recovery could be made upon the complaint as it stood; that it might be possible in some other action he could recover, but that he certainly could not in the instant one. Thereafter counsel for plaintiff asked leave to amend the complaint so as to change the action from one on an assigned contract to one on a direct contract with plaintiff. Objection was made by counsel for defendant, in the following language:

"Yes, your Honor, we do object to the amendment, and I will tell you the reason why. That paragraph is the basis of part of my answer and I allege fraud and they are trying to get out from under the exact thing that I allege. Therefore, they are asking the court to make a new contract for them and we have

drawn our answer and based our answer upon their allegations.''

and the court, in answer to the contention of plaintiff's counsel that no injustice would be done by permitting the amendment, said:

''No, the court has not the power to permit you to amend and then hold them in court and proceed with the trial unless the court gives them an opportunity to answer and defend against this complaint because it is an entirely different situation. There is such a thing as a trial amendment, but it does not go to this difference. So your offer to amend is denied.''

An adjournment was taken until the next morning when counsel for plaintiff made a formal offer of an amendment along the lines referred to, but did not offer to agree to a continuance. The offer was denied, and, on motion of defendant, judgment was rendered in her favor on the complaint.

The case then went on to trial on the cross complaint, and the following factual situation was developed: Joe Protis and his wife, Lena Protis, entered into the bakery business in 1932, at Deming, New Mexico, purchasing their equipment from the company. They continued in business in Deming until about the first of 1935 when they sold their bakery under a conditional sales contract to one F. C. Bowman, with a balance due them under such contract of something like $1,400. In July, 1935, they entered into another conditional sales contract with the company for the purchase of bakery machinery, in the sum of $2,677, to be installed at Superior, Arizona, paying on said contract $500 cash, and assigning to the company the conditional sales contract covering the Deming property, which they had made with Bowman. The latter eventually paid the amount due thereunder in full to the company. Thereafter Protis paid the balance due on the Superior sales contract from time to time until,

at his death in April, 1937, it was fully paid out. Shortly after his death plaintiff went to the town of Hayden, where Mrs. Protis was endeavoring to carry on the bakery business with the equipment above referred to, and told her there was still due on such contract something over $1,800, and that she either had to enter into a new contract with him and assume the payment of the money or he would repossess the property. Not being familiar with all the transactions between her husband and the company and the payments made on the Superior contract, she believed what plaintiff told her and entered into a contract covering the property, which, as we have stated, had already been paid for in full, agreeing to pay the company $1,843.29 therefor. Thereafter she continued to operate the bakery for some six or eight months, but was unsuccessful, for various reasons, and closed it on December 24, 1937. Sometime after this plaintiff, without ·her knowledge or consent, sold the bakery equipment to a man named Ainsworth, on a conditional sales contract, for $1,500. Ainsworth did not complete his contract and abandoned the property, whereupon plaintiff, without the knowledge or consent of defendant, shipped all of the equipment to Los Angeles, and there disposed of it. Thereafter plaintiff rendered to defendant a bill, stating that there was still due on said contract $229, and demanded payment thereof. About ten months later this suit was filed, at which time the $229 had, in some manner, increased, according to plaintiff's sworn statement, to $1,071.22.

There was a large amount of testimony taken, from which a jury might reasonably have drawn the conclusion that the whole transaction, after the death of Protis, represented an attempt on the part of plaintiff to defraud a woman who had just lost her husband and was not familiar with the business transactions up to that time between plaintiff, the company and

the husband. A verdict was returned on the cross complaint in favor of defendant, in the sum of $1,770.-50, and after rendition of judgment, this appeal was taken.

The first assignment of error was that the court refused to permit plaintiff to amend his complaint. It is urged that it has always been the rule in Arizona that amendments should be allowed liberally in the interest of justice, so that cases should ultimately be tried on their merits and not on technical questions of procedure.

The general rule of law is unquestionably as stated by plaintiff, but no rule of law operates *in vacuo*. It must be applied to the particular facts of the particular case. Upon a careful examination and analysis of the testimony leading up to the attempted trial amendment, we think the trial court was fully justified in taking the position that the interests of justice in this particular case would not be served by permitting the amendment to be made. It is evident from this testimony that to permit the amendment would necessarily have completely altered the entire theory of the case, would have required a reformation of a written contract, and have destroyed a perfect defense going to the validity of the contract itself, regardless of whether it was assigned or not. On the whole record, we are of the opinion that we cannot say the court committed reversible error in refusing to allow the amendment. It may be that plaintiff is entitled to file a new action setting up his later theory of the contract, but this we need not decide at the present time.

The remainder of the assignments of error may be divided into three classes: First, misconduct on the part of the court and counsel for defendant in the conduct of the trial. Without discussing this matter at length, we are satisfied that the court was fully justified in its remarks, and that even if the zeal

of counsel for defendant did carry him a little beyond the strict line of propriety, on the record as made it could not possibly have affected the verdict of the jury. Second, that the verdict was not sustained by the evidence in the case. We have examined the entire record and are satisfied that the evidence of plaintiff himself, together with the written evidence in the case, was amply sufficient to sustain the verdict. The third is that there was newly discovered evidence on which the court should have granted the motion for new trial. The newly discovered evidence merely went to impeach defendant's testimony with alleged contradictory statements made by her. We have held that evidence of this character does not usually justify a new trial. *Gordon* v. *Brewer,* 21 Ariz. 402, 189 Pac. 243; *Ren* v. *Jones,* 38 Ariz. 476, 1 Pac. (2d) 110; *Sharples* v. *Duvall,* 17 Ariz. 173, 149 Pac. 673.

We have examined the entire record, and are of the opinion that upon the whole case the judgment on the cross complaint was fully sustained by the evidence, and that no material error of law was committed during the trial of the case.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.