406 P.2d 750

George J. BLECICK, Lester Fischer, and Jasper Peters, copartners doing business under the style and firm name of George J. Blecick Construction Co., Appellants,

v.

SCHOOL DISTRICT NO. 18 OF COCHISE COUNTY, Arizona, Dave M. Farris, M. H. Barnes and Carl S. Graves, Jr., as members of the Board of Trustees of School District No. 18 of Cochise County, Arizona; and Emerson C. Scholer and Santry C. Fuller, as individuals and Scholer & Fuller, Associated Architects, an Arizona corporation, Appellees.*

No. 2 CA–CIV 12.

Court of Appeals of Arizona.
Oct. 20, 1965.
Rehearing Denied Jan. 5, 1966.
Review Denied Feb. 1, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7375. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

Carl W. Divelbiss, Phoenix, for appellants.

Dunseath, Stubbs & Burch, by Dean Burch, Tucson, for appellees Emerson C.

**118**

Scholer and Santry C. Fuller as individuals, Scholer & Fuller Associated Architects, an Arizona corporation.

Richard J. Riley, Cochise County Atty., Bisbee, for appellees School District No. 18 and Members of the Board of Trustees of School District No. 18.

HATHAWAY, Judge.

In 1959, appellants (plaintiffs below) filed an action in Superior Court, Pima County, Arizona, against the appellees (defendants below), seeking to recover a balance allegedly due under the terms of a construction contract. This contract, entered into by the plaintiffs and School District No. 18 of Cochise County, Arizona, acting by and through its Board of Trustees, provided for the construction of school rooms for the San Simon Elementary School at an agreed price. The complaint in substance alleged:

A. That the contract was substantially completed in June, 1958 and fully completed in October, 1958;

B. That the agreed contract price was $140,785 and that during the course of construction various changes were made whereby the total contract price was increased to $144,485;

C. That plaintiffs had been paid the sum of $124,581.87, leaving a balance due to plaintiffs in the amount of $19,903.13;

D. That plaintiffs had demanded payment of the balance from the school district who refused to pay same;

E. That plaintiffs had fully performed in accordance with the plans and specifications;

F. That certain materials installed had proved to be defective through no fault of the plaintiffs but rather were because of errors in the plans and specifications;

G. That the defendants Scholer & Fuller, as the architects, arbitrarily refused to issue a final certificate certifying to full performance of the contract; and

H. That the acts of Scholer & Fuller were arbitrary, without just excuse and made for the sole purpose of hindering and delaying plaintiffs and damaging them in the amount of the balance due.

In lieu of a responsive pleading, defendants, Scholer & Fuller and Scholer & Fuller, Associated Architects, filed a motion to dismiss the complaint for failure to state a claim against them. The motion was granted and a judgment of dismissal entered. In the School District's answer it admitted nonpayment of the balance due because the architects' final certificate had not been issued and alleged that the plaintiffs had failed to complete the construction in accordance with the contract. In addition, the School District counterclaimed for damages in the sum of $25,000, alleging negligence and careless workmanship in the performance of the contract and failure to complete the construction. The plaintiffs stated in their reply that any damages sustained by the School District were the result of errors in the plans and specifications and the plaintiffs were not at fault. On defendant School District's motion for a change of venue, the cause was transferred to Cochise County.

The case was tried to the court sitting without a jury and submitted upon written memoranda. The school, subject matter of the dispute, was viewed by the court on stipulation of counsel. The decision of the court was that plaintiffs were entitled to recover the balance due on the contract, $19,903.13; that the defendant School District was entitled to damages on its counterclaim in the amount of $12,000 to be deducted from plaintiff's recovery; and that plaintiffs were entitled to have judgment for $7,903.13. Judgment for the plaintiffs against the defendant School District No. 18 for the sum of $7,903.13 plus costs was entered. Plaintiffs now appeal from this judgment, the judgment of dis-

missal as to defendants Scholar and Fuller, and the denial of their motion for a new trial.

Plaintiffs contend that the lower court erred in the following respects:

1. Granting the motion to dismiss as to the defendants Scholar and Fuller.

2. Allowing a $12,000 set-off against plaintiffs' recovery.

3. Excluding certain documentary evidence offered by plaintiffs.

4. Refusing to grant a new trial to the plaintiffs on the basis of "newly-discovered evidence."

## MOTION TO DISMISS

A motion to dismiss a complaint for failure to state a claim on which relief can be granted admits the truth of the facts alleged therein for purposes of the motion. Pinkerton v. Pritchard, 71 Ariz. 117, 124, 223 P.2d 933 (1950); Roberts v. Spray, 71 Ariz. 60, 65, 223 P.2d 808 (1951); Davis v. State, 1 Ariz.App. 264, 401 P.2d 749, 753 (1965). For purposes of testing the propriety of the order granting the motion to dismiss, we must consider all the allegations as true. Davis v. State, supra.

The plaintiffs' allegation in the complaint as to the execution of the contract admits that the architects were not contracting parties. Consequently they have no contractual obligation to pay any balance due under the terms of the contract.

The other pertinent allegations of the complaint are as follows:

"Plaintiffs allege that although any and all materials were furnished and installed in accordance with the drawings, plans, and specifications as prepared by the said Scholer & Fuller and so directed by the said Scholer & Fuller and the said Board of Trustees, certain materials installed by plaintiffs as aforesaid did, by reason of errors in said drawings and specifications made on the part of the said Scholer & Ful-

ler, prove to be defective all through no fault of plaintiffs, but that the said Scholer & Fuller, Architects, arbitrarily and without just cause refused to issue a final certificate stating that the contract had been completed and certifying as to the balance due plaintiffs. The difficulties experienced in connection with some of the materials installed by plaintiffs were a direct result of an error made in the drawings and specifications by the said Scholer & Fuller, and which said error the said Scholer & Fuller refused to admit or accept, and further, refused to correct the same. That any and all of the acts of the said Scholer & Fuller in refusing said final certificate as to completion and payment were arbitrary, without just cause or excuse, and made for the sole purpose of hindering, delaying and damaging plaintiffs, all in the aforesaid sum of $19,903.13. At all times herein mentioned the said Scholer & Fuller, as said architects, were acting as the agent of the defendant School District * * *"

The defendants-architects' motion to dismiss the complaint was accompanied by an affidavit which enumerated, in ipsis verbis, certain provisions of the construction contract relative to (a) the supervisory powers and duties of the architects, including issuance of a final certificate and (b) the performance required of the contractor.

The problem has two facets:

1. Is an architect liable to a contractor for the preparation of defective plans and specifications?

2. Is an architect immune from a civil action for damages by a contractor for refusal to issue a completion certificate as required in the contract between the owner and the contractor?

Assuming the truth of plaintiffs' allegations as to the defects in the plans and specifications, we agree with the trial court that no claim has been stated against

the architects. We must bear in mind that there are two separate and distinct contracts involved here: (1) a contract between the School District and the architects for preparation of plans and specifications and supervisory activities to be performed by the architects and (2) a construction contract between the School District and the plaintiffs. There is no privity between plaintiffs and the architects by virtue of the first contract nor are plaintiffs third-party beneficiaries thereof. The obligations of performance due thereunder by the architects are owed solely to the School District and only the School District can assert claims for breach of said contract.

■■ On the other hand, the construction contract requires the plaintiffs to build in accordance with the plans and specifications. If they fulfilled their contract, they were entitled to recover the contract price, regardless of defects in the plans. In order for plaintiffs to maintain an action against the School District for payment, it was necessary for plaintiffs to allege full performance of their contractual obligation, i. e., performance in accordance with the plans and specifications. The mere co-existence of the two contracts, with one contracting party (the School District) common to both, does not give the plaintiffs a right to enforce obligations owed by the architects to the School District.

■ Plaintiffs have cited numerous authorities to support their position that the defendants-architects are liable, inter alia, Mindeman v. Douville, 112 Wis. 413, 88 N.W. 299 (1901); Northwestern Marble & Tile Co. v. Megrath, 72 Wash. 441, 130 P. 484 (1913); Shine v. Hagemeister Realty Co., 169 Wis. 343, 172 N.W. 750 (1919); Haugen v. Raupach, 43 Wash.2d 147, 260 P.2d 340 (1953); Piper v. Murray, 43 Mont. 230, 115 P. 669 (1911); Guarantee Title & Trust Co. v. Willis, 38 Ariz. 33, 297 P. 445 (1931); Gillespie Land & Irrigation Co. v. Hamilton, 43 Ariz. 102, 29 P.2d 158 (1934); Reinhardt Construction Co. v. Mayor & City Council of Baltimore, 157 Md. 420, 146 A. 577 (1929); Howard County v. Pesha, 103 Neb. 296, 172 N.W. 55 (1919). Despite the wealth of authority presented, we cannot agree with the plaintiffs' interpretation of them. There is no single case among all those cited to us, nor has independent research disclosed any, which holds that the architect is directly liable to the contractor for defective plans and specifications. These cases merely support the view that a contractor may recover the sum due under the contract from the *contractee-owner* in situations (a) where errors were made in the plans and specifications or (b) where a required certificate was unreasonably withheld.

■ The remaining question as to whether the architects have immunity from suit for refusal to issue a completion certificate must be answered in the affirmative. In the capacity of an arbitrator whose functions require the exercise of judgment, an architect cannot be held liable in damages for failure to exercise care or skill in the performance of his functions. Wilder v. Crook, 250 Ala. 424, 34 So.2d 832, 834 (1948); 5 Am.Jur.2d, Arbitration and Award § 107. Where a construction contract such as the one herein involved authorizes payments to the builder only after issuance of certificates by the supervising architects and vests the architects with broad supervisory powers, the architects, in making decisions as to the granting of certificates, are acting in the capacity of arbitrators. City of Durham v. Reidsville Engineering Co., 255 N.C. 98, 120 S.E.2d 564, 567 (1961); 13 Am.Jur.2d, Building and Construction Contracts § 33.

■ Plaintiffs and defendants-architects rely on Craviolini v. Scholer & Fuller, Associated Architects, 89 Ariz. 24, 357 P.2d 611 (1961). We agree that the principles of law therein set forth are applicable. As stated by our Supreme Court:

"The rule seems to be well settled that an architect who by agreement between the owner and the contractor is empowered to resolve disputes arising between them acts, in resolving

such disputes, as a quasi-arbitrator. As a quasi-arbitrator he performs what is usually referred to as a 'quasi-judicial' function—whatever that may mean—and is clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of his performance of his quasi-arbitrator's duties." 89 Ariz. at p. 27, 357 P.2d at p. 613.

The court goes on to say:

"The immunity in question here is one bestowed by public policy on those people who, by office or by contract, are called upon to act as judges. It is in every real sense a judicial immunity. It attaches to every act done in the judicial capacity, but to no other. Thus the architect has no immunity *as an architect;* immunity attaches only when he is performing those particular and limited functions which require the architect to act in the capacity of a judge. * * * In the role of arbitrator, and in that role alone, goes the cloak of immunity. In applying this principle, the court must look to the allegations of the complaint against the architect." 89 Ariz. at p. 28, 357 P.2d at p. 613. (Emphasis in original)

The allegations of the complaint in the Craviolini case are distinguishable from those in the instant case. The Craviolini complainants alleged, among other things, a conspiracy between the architects and their corporate entity whereby they undertook to bankrupt the plaintiffs and to interfere with the contract relations between the plaintiffs and the board of supervisors. These acts with which the architects were charged were beyond the scope of their role as arbitrators. We have no similar allegations here.

▮ The allegations of the complaint in the case at bar concerning the architects' refusal to issue a final certificate refer to an act done in their capacity as arbitra-

tors, City of Durham v. Reidsville Engineering Co., supra, and the motion to dismiss was properly granted. See Cahn v. International Ladies' Garment Union, 311 F.2d 113, 114 (3rd Cir.1962).

## SET-OFF

Plaintiffs were allowed to recover the full amount of the balance due on the contract price less the sum of $12,000 allowed to the defendant School District on its counterclaim. It is undisputed that the construction is defective. A detailed description of the precise nature of the defects would serve no useful purpose. Suffice it to say that the defects related to the roof, walls, flooring and painting. Plaintiffs' witnesses testified at the trial substantially to the effect that the defects were attributable to faulty planning. Their conclusions were based on their observations and inspections of the construction several years after completion.

▮ Witnesses for the defendant School District testified concerning plaintiffs' departure from the plans and specifications and their careless, sloppy workmanship. There was ample evidence from which the trial court could find that the construction defects were the plaintiffs' fault and this court will not disturb the judgment of the trial court where there is reasonable evidence to support it. Deuel v. McCollum, 1 Ariz.App. 188, 400 P.2d 859, 862 (1965); Graham v. Vegetable Oil Products Co., 1 Ariz.App. 237, 401 P.2d 242, 246 (1965).

▮ No findings of fact were requested or made in the lower court. However, there being reasonable evidence to support a finding of fault on the part of the plaintiffs, we must assume that the trial court found every controverted issue of fact to sustain the judgment. Silva v. De Mund, 81 Ariz. 47, 299 P.2d 638, 640 (1956).

Plaintiffs' two-pronged attack on the damages allowed to the School District is:

1. The testimony of the architects that $12,000 would be the cost of re-

pairs is insufficient to support the allowance of $12,000 and

2. The cost of remedying the defects is not the proper rule to be applied.

The only evidence in the record of the cost of remedying the construction was the testimony of the architects. The determination of the cost of repairs is necessarily a matter of estimate by a person qualified in the class of work in question and is a proper subject of opinion testimony when given by properly qualified witnesses such as architects. 20 Am.Jur., Evidence § 833. Plaintiffs neither challenged the expertise of the architects to render an opinion nor did they cross-examine regarding the basis for such estimate. They did not question the architects concerning the individual repair items upon which the total figure was based. Having failed to inquire into the matter in the trial below, they cannot now complain that the $12,000 figure was accepted by the court.

The plaintiffs having been allowed to recover the balance due on the contract price, we presume the trial judge found substantial performance of the construction work required by the terms of the contract. Therefore, the sole issue is: Was the School District entitled to recover the reasonable cost of completing the building to conform to the contract rather than the difference in value between the building had it been so completed and the value of the building as erected? Plaintiffs contend that the difference-in-value rule is the required measure of damages to be applied.

This question has not been answered in this jurisdiction, and in the absence of prior decisions to the contrary, our Supreme Court has indicated that we will follow the Restatement of the Law whenever applicable. See MacNeil v. Perkins, 84 Ariz. 74, 81, 324 P.2d 211 (1958); Bristor v. Cheatham, 75 Ariz. 227, 236, 255 P.2d 173 (1953); Ingalls v. Neidlinger, 70 Ariz. 40, 216 P.2d 387, 390 (1950).

The Restatement of the Law of Contracts § 346(1) (a) sets forth the compensatory damages recoverable from a builder for breach of a construction contract as follows:

\* \* \* \* \* \*

"(a) For defective or unfinished construction he can get judgment for either

(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste." Restatement of the Law of Contracts, pages 572–573.

\* \* \* \* \* \*

There is an excellent collection of cases from various jurisdictions assembled in an annotation on the *cost* and *value* measures of damages in 76 A.L.R.2d 805. A survey of the numerous cases dealing with the subject reveals a myriad of expressions of what circumstances or set of circumstances are required to shift from the cost rule to the value rule. Learned text-writers have expressed their views on the subject. Professor Williston, in his work on Contracts (Revised Edition) § 1363, at pages 3825–3826 of Volume 5 advances a rule that requires that the defect not be remediable from a practical standpoint in order to apply the difference-in-value rule. Corbin on Contracts, Vol. 5 §§ 1089 et seq., states that the cost theory prevails " \* \* if this is possible and does not involve unreasonable economic waste." Professor Corbin states:

"Without question, the contract breaker should pay the cost of construction and completion in accordance with his contract unless he proves affirmatively and convincingly that such con-

struction and completion would involve an unreasonable economic waste." Vol. 5 at p. 488.

Plaintiffs in their opening brief rely heavily on the following portion of the rule laid down in 9 Am.Jur., Building and Construction Contracts § 43.

"* * * However, where the defective material has become an inherent part of the building so that the defect · cannot be remedied except by taking down and ·doing over some substantial portion of the work, involving such an expenditure that the contractor would be deprived of adequate compensation, the amount allowable to the owner is the amount which the building, by reason of the defect, is worth less than it would have been if constructed in entire conformity to the contract."

The plaintiffs argue that if, as the defendant School District's witnesses testified, all of the basic components are defective and the defects are not unsubstantial, the value rule of recovery should be applied. We do not agree with plaintiffs' interpretation. The cost rule of damages has been applied by courts in various instances where the defects were in floors, walls, and roofs. See: Bernbaum v. Hodges, 43 Wash.2d 503, 261 P.2d 968 (1953); Busboom v. Smith, 199 Okl. 688, 191 P.2d 198 (1948); Loggins v. Gates, 301 S.W.2d 525 (Tex.Civ.App.1957); Davis v. Stow, 60 So.2d 630 (Fla.1952); Shell v. Schmidt, 164 Cal.App.2d 350, 330 P.2d 817, 76 A.L.R.2d 792 (1958); Phipps v. Lopinsky, 97 W.Va. 547, 125 S.E. 250 (1924); Springer v. Jones, 76 Ind.App. 269, 123 N.E. 816 (1919); Nees v. Weaver, 222 Wis. 492, 269 N.W. 266, 107 A.L.R. 1405 (1936).

The value rule comes into play only when the defects cannot be remedied to conform to the contract without substantial destruction of the building, i. e., such destruction as would amount to "economic waste." Plaintiffs are erroneously equating substantial destruction with substantial defects to justify their position. We agree with the Restatement of Contracts, supra, and Professor Corbin's view that the burden is on the builder to affirmatively prove· that economic waste would· result from remedying the defects. This the plaintiffs have not done and the School District is entitled to recover the cost of making the structure conform to the contract.

## EXCLUSION OF EVIDENCE

Plaintiffs contend that the trial court erred in refusing to allow them to introduce into evidence certain applications and certificates for progress payments which they attempted to introduce during cross-examination of a defense witness. The court refused to admit the documents because of unexplained written matter appearing thereon. On rebuttal the extraneous writing was identified by plaintiffs' witness and the exhibits reoffered into evidence. The court refused on the grounds that they were not proper rebuttal. Plaintiffs argue that the documentary evidence was offered to impeach the architects' testimony concerning defects existing prior to completion of the construction. The admission of evidence is a matter wholly within the discretion of the trial court, Central Copper Co. v. Klefisch, 34 Ariz. 230, 243, 270 P. 629 (1928), and we find no abuse of discretion. Furthermore, certificates of payment given during the progress of the work are not regarded as conclusive that the work therein certified to was properly performed. 17A C.J.S. Contracts § 498(8)d.

## DENIAL OF MOTION FOR NEW TRIAL

We find no merit in plaintiffs' contention that the trial court erred in refusing to grant a new trial on the basis of "newly-discovered evidence," a certificate of the Celotex Corporation, issued prior to trial, in which the roof installation was certified as correct. At the time of trial,

the Celotex representative testified that the roofing construction was defective. Rule 59(a) (4) of the Rules of Civil Procedure 16·A.R.S. requires that the new evidence be such as could not have been discovered with reasonable diligence at the time of trial. No showing was made of the exercise of due diligence to procure the evidence nor of its non-discoverability prior to trial. Furthermore, newly discovered evidence to impeach or discredit a witness is not ordinarily grounds for a new trial. Aiken v. Protis, 59 Ariz. 101, 107, 123 P.2d 169 (1942); Gordon v. Brewer, 21 Ariz. 402, 404, 189 P. 243 (1920).

For the reasons herein stated, the judgments appealed from are affirmed.

MOLLOY, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS, Pima County, was called to sit in his stead and participate in the determination of this decision.