407 P.2d 113

**Virginia CORDOVA, a widow, Appellant,**

**v.**

**The CITY OF TUCSON, a municipal corporation, Appellee.***

**No. 2 CA–CIV 20.**

Court of Appeals of Arizona.

Oct. 26, 1965.

*This appeal was filed with the Arizona Supreme Court and assigned that Court's No. 7471. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

George B. Morse, Tucson, for appellant.

Calvin Webster, City Atty., City of Tucson, Tucson, for appellee.

GORDON FARLEY, Superior Court Judge.

The plaintiff-appellant, Virginia Cordova, hereinafter referred to as "Cordova", owns an adobe house in Elysian Grove Addition, a subdivision of the City of Tucson. In 1954 the defendant-appellee, the City of Tucson, hereinafter referred to as "the City", formed the Elysian Grove Improvement District for the purpose of paving and curbing the streets and providing a drainage system for the subdivision. The engineering and planning of these improvements was done by the City's Engineering Department, and after the completion of the improvements the City undertook to maintain the drainage system.

On the evening of August 20, 1959 a heavy rain fell in and around Elysian Grove Addition. The drainage system did not work and rain water flowed back upon Cordova's property, flooding through her house and causing extensive damage. Cordova subsequently brought this action against the City to recover for the damages to her real property, furnishings and personal property. Her original complaint was predicated upon two theories: (a) negligence by the City in improperly constructing and maintaining the drainage system, and (b) inverse eminent domain, based on

the taking of Cordova's property by the City by reason of the rain water which backed up from the drainage system and flooded her property.

The City's answer to Cordova's amended complaint admitted that the City was maintaining the drainage system and set up the affirmative defenses of contributory negligence and assumption of risk. Later the City amended its answer to plead the defense of an Act of God.

The case proceeded to trial on the theory of inverse eminent domain only after Cordova had amended her complaint to omit the negligence theory. However, at the end of her case the trial court permitted her to: (a) amend her complaint so as to conform it to the evidence, (b) again pled negligence on the part of the City in the planning and maintenance of the drainage system in Elysian Grove Addition, and (c) withdraw the theory of inverse eminent domain. At that point the City moved for a continuance of the trial for a month for the asserted purpose of meeting the issues raised by Cordova's trial amendment and for the purpose of gathering additional evidence. The motion for a continuance was denied; but the City was granted a postponement until 1:30 p.m. of the following day to obtain such evidence and to file its answer to the trial amendment.

The jury found, in effect, in response to twenty-two special interrogatories, that the City had been negligent in the planning and maintenance of the drainage system in the subdivision, that such negligence had been the proximate cause of the damage to Cordova's property, and that the amount of such damage was $10,000.00. Judgment for that amount was entered. Thereafter the court granted the City's motion for a new trial, and in a memorandum opinion stated that it was doing so because it doubted the wisdom of its decision in permitting Cordova to amend her complaint at the conclusion of her case in order to state a completely new theory of recovery without permitting the City a continuance to meet such amendments and because it believed there was an inconsistency in the jury's answers to the interrogatories.

On this appeal by Cordova from the order granting a new trial, we will dispose first of the primary question of judicial discretion. After the jury had returned its verdict, the trial judge obviously had some misgivings about having allowed Cordova's trial amendment of her complaint in order to conform it to the evidence. Having once exercised his discretion during the trial, a judge's subsequent reversal of that decision is proper only if it is based on the existence of a clear and cogent mistake of law, not arbitrary or capricious reasons. In State ex rel. Morrison v. McMinn, our Supreme Court said:

"While it is true that the granting of a new trial is to a great extent discretionary with the trial court, such discretion, although broad, is legal and not arbitrary and must be exercised according to reason and law. (Citing cases) The trial judge must of course have wide discretion because of his intimate relation to the trial and primary justice. This does not mean, however, that this court should abandon all supervision and fail to impose the limitation of legal standards on the exercise of trial court judicial discretion. Thus, where the probative force of the evidence clearly demonstrates that the verdict of the jury is correct, the trial judge exceeds the bounds of judicial discretion in granting a new trial and it is the duty of this court to reverse the action. (Citing cases)" 88 Ariz. 261, 262, 355 P.2d 900, 901–902, (1960).

Can the record sustain the trial court's finding that the trial amendment of the complaint presented a *completely new theory* of recovery? It is undisputed that the issue of negligence was raised in Cordova's original complaint, as was the issue of contributory negligence in the City's answer. Furthermore, the issue of negligence was

tried with the City's implied consent, since it did not object to the admission of any evidence bearing on that issue; nor was a continuance requested until Cordova had moved to amend her complaint in order to conform it to the evidence at the end of her case.

In Leigh v. Swartz, our Supreme Court said:

"Amendments to conform to the evidence under section 21-449, A.C.A. 1939, Rule 15(b) should be liberally allowed in the interest of justice and are within the discretion of the trial court. Aiken v. Portis, 59 Ariz. 101, 123 P.2d 169; Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941. The spirit and purpose of allowing these amendments is for the case to be ultimately tried on its merits so that the parties to the litigation, in one trial, will receive all the relief to which they are entitled. Therefore if evidence is presented in the trial of a case which presents a new or different theory from that alleged in the pleadings, and the adverse party does not object to the introduction of that evidence, that issue is then tried by implied consent and the pleadings, upon request of counsel, should be amended to conform to the evidence." 74 Ariz. 108, 112–113, 245 P.2d 262, 265, (1952).

Thus Rule 15 (b), 16 A.R.S. not only authorizes trial amendments of the pleadings in cases such as this but appears also to encourage such action in order that cases may be disposed of on the merits and without unnecessary delay. The trial court in the instant case, having permitted Cordova, in conformity with Rule 15(b) of the Rules of Civil Procedure, to amend her complaint, recessed the trial until 1:30 p.m. of the following day so that the City could meet the issue of negligence. The trial court, from its coign of vantage, must of necessity have weighed the arguments pro and con at the time of its ruling and have concluded that the issue could be met by the defendant if granted a short recess. We think that the action of the trial court up to that point was proper and in conformity with the spirit of Rule 15(b). When the trial resumed, the City introduced evidence in an attempt to refute Cordova's contention as to negligent maintenance and construction.

■ It is important to note that the trial court, in granting a new trial, did so, not because the evidence did not justify the verdict, but (insofar as the point under discussion is concerned) merely because it doubted the wisdom of permitting the trial amendment without granting a continuance beyond the one day allowed. The record does not sustain the trial court's stated reason that a completely new theory of recovery was authorized by the trial amendment. Negligence had been pleaded by both parties at earlier stages of the litigation and the City had been afforded a reasonable interruption of the trial to meet the issue, which, under the circumstances, could not have come to it as a complete surprise. We hold therefore that the order granting a new trial for such reason was unreasonable and arbitrary.

We turn now to the trial court's other reason for granting a new trial, to wit, the inconsistency in the jury's answers to interrogatories. In answering interrogatories 1, 1(A), 9 and 10, the jury found that the City had been negligent, that there had not been an "Act of God" and that an "Act of God" had not been the proximate cause of Cordova's damage; yet, its answer to interrogatory 11, which asked:

"If you find that there was an Act of God on the evening of August 20, 1959, and *you also find there was an obstruction to the artificial open drain between Carillo and Simpson Streets,* would the plaintiff's property have been flooded if there had been *no obstruction* to the open drain?" (Italics ours.)

was in the affirmative.

The jury found, by answering the other twenty-one interrogatories, that the City had been: grossly and palpably negligent in planning and constructing the drain, grossly and palpably negligent in its main-

tenance, and solely responsible for the condition of the drain. As has been noted, some twenty-two interrogatories were submitted to the jury. In only one instance, viz., the answer to interrogatory 11, does there appear to have been any inconsistency with the remaining findings or with the general verdict.

 Juries, of course, are composed of laymen, and it is not uncommon for some confusion to result when extensive findings are submitted for their consideration. Judicial notice may be taken of the difficulty laymen encounter in attempting refinements in terminology which are significant to the legally trained but have a different connotation in the ordinary sense or usage. The term an "Act of God" is within that category, and it is not unreasonable to assume that in answering interrogatory 11 the jury regarded the rainfall as an act of God in the non-legal sense. It is clear from a careful examination of the underlined portions of the interrogatory that it related essentially to and its focal point was the existence or absence of an obstruction to the drain. In other words, in essence the interrogatory would seem to have called for a response by the jury as to whether or not they regarded the City to have been negligent in the designing of the drain. Applying such a construction to the interrogatory, it is perfectly consistent with the jury's finding. In any event, the remaining twenty-one responses to the interrogatories were consistent with the verdict and clearly indicated that the jury found the damages to Cordova's property to have been due solely to the City's negligence both in maintaining and in designing the drain which caused the water to overflow Cordova's property.

The trial court should either have had the jury correct the inconsistency or have treated it as immaterial and not in derogation of the general verdict.

For the foregoing reasons the order granting a new trial is reversed and it is ordered that judgment be entered in favor of the plaintiff-appellant, Virginia Cordova, on the verdict, with costs.

KRUCKER, C. J., and HATHAWAY, J., concurring.

NOTE: Judge JOHN F. MOLLOY, having requested that he be relieved from consideration of this matter, Judge GORDON FARLEY was called to sit in his stead and participate in the determination of this decision.