Ernest W. BALLOU, Trustee in Bankruptcy for Virginia Prestressed Concrete Corporation, Third-Party Defendant, Appellant,

v.

BASIC CONSTRUCTION COMPANY, Plaintiff, The Fidelity and Casualty Company of New York, Defendant and Third-Party Plaintiff, Elmer Paul Hayes, et al., trading as Hayes, Seay, Mattern and Mattern, Roy O. Allen, et al., trading as Skidmore, Owings and Merrill and Community Hospital of Roanoke Valley, Third-Party Defendants, Appellees.

The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant and Third-Party Plaintiff, Appellant,

v.

BASIC CONSTRUCTION COMPANY, Appellee.

Nos. 12453, 12454.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 3, 1968.

Decided March 6, 1969.

John S. Davenport, III, Richmond, Va., (William R. Cogar, Collins Denny, III, and Mays, Valentine, Davenport & Moore, Richmond, Va., on brief) for appellant Ballou.

S. D. Roberts Moore, Roanoke, Va., (Gentry, Locke, Rakes & Moore, Roanoke, Va., Edward A. Shure, and Shure & Bruder, New York City, on brief) for appellant Fidelity and Cas. Co. of New York.

Lewis T. Booker, Richmond, Va., (Robert F. Brooks, and Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief) for appellee Basic Construction Co.

M. Caldwell Butler, Roanoke, Va., (A. Linwood Holton, Jr., and Eggleston, Holton, Butler & Glenn, Roanoke, Va., on brief) for appellees Elmer Paul Hayes, and others.

Wilbur L. Hazlegrove, Roanoke, Va., (Daniel S. Brown, and Hazlegrove, Carr, Dickinson, Smith & Rea, Roanoke, Va., on brief) for appellee Community Hospital of Roanoke Valley.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

This litigation illustrates the predicament which may arise when a loss must be assigned to one or more of the parties, none of whom had full power or responsibility to avert it.

Basic Construction Company, the general contractor for the erection of Community Hospital in Roanoke, Virginia, sued Fidelity and Casualty Company of New York, the surety on a performance bond given by a subcontractor, Virginia Prestressed Concrete Corporation. Fidelity then brought third party actions against Virginia Prestressed, the architects, and the hospital. Virginia Prestressed, in turn, counterclaimed against Basic Construction and crossclaimed against the architects and the hospital.

Full use of discovery in the District Court resulted in the production of hundreds of exhibits and extensive testimony in the form of depositions, admissions, and answers to interrogatories. Basic, the hospital, and the architects then moved for summary judgment on all claims asserted against them by Fidelity and Prestressed. These motions were granted, and after a hearing on damages the court entered judgment for Basic against Fidelity on its bond for

$488,928 plus interest and costs. Judgment over was entered against Prestressed on Fidelity's claim for indemnity; the hospital and architects were awarded their costs.

Prestressed appeals from the judgments entered against it in favor of Basic, Fidelity, the hospital and the architects. Fidelity appeals only from the judgment against it in favor of Basic.

The District Court stated in granting the motions for summary judgment that the facts underlying this litigation are not in dispute. Basic Construction was the general contractor on a seven million dollar contract for the construction of Community Hospital. Basic entered into a subcontract with Virginia Prestressed for the fabrication and delivery of precast concrete columns. Fidelity became surety for Virginia Prestressed on a performance bond for $498,000, the amount of the subcontract.

The subcontract required the production of 200 concrete columns, designed to constitute a facade when set in fifty-column tiers around the four sides of the hospital. The columns, fabricated by pouring concrete over longitudinal steel reinforcing bars, were required by the contract to be made "in strict conformity" with the contract specifications. These called for a two inch cover of concrete over the steel bars, with permissible tolerance of plus or minus one half inch.

Virginia Prestressed began performance in the summer of 1964, and by December had made and installed the first tier of fifty columns. At that time, it was discovered that some of the columns contained improperly positioned steel bars, and that as a result those columns did not have the requisite minimum concrete cover. On December 28, 1964, the architects rejected forty-one of the first fifty columns and directed Basic to have them replaced.

Under the specifications applicable to both the prime contract and the subcontract, the architects had the right to determine the acceptability of work, to reject defective material or workmanship, and to have such work replaced by the contractor without charge. They were also responsible for interpreting the contract documents on all questions involving the execution of the work, subject to arbitration.

When the defects became known, Basic argued that the condemned columns should be accepted notwithstanding the fact that they failed to meet minimum requirements. It obtained experts at its own expense to convince the architects or the hospital that a lesser cover was acceptable because of the high quality of concrete used in the columns. The architects adhered to their position that one and one half inches was the minimum acceptable cover, and the hospital refused to alter the contract requirements without the architects' approval.

Failing to persuade either the architects or the hospital to accept the columns, Basic demanded arbitration, as provided in the contract. The precise question the parties submitted to the arbitrator was which of the 139 columns already fabricated by Prestressed "comply with the contract documents, as correctly construed." He found that the contract clearly required at least one and one half inches of cover and that 45 of the 139 columns fully complied with the contract requirement. Basic accepted the 45 columns and served notice on Prestressed to replace the others and complete the contract.

Prestressed had stopped work in December 1964 when the defects were first discovered. Arbitration took place in May 1965. By the time Basic requested replacement of the columns, Prestressed was no longer financially able to complete the contract. When this became apparent, Basic declared Prestressed in default. Prestressed later went into bankruptcy.

Basic relet the subcontract, and it has been stipulated for the purposes of the suit that Basic suffered damages in excess of one million dollars as a result of Prestressed's default. Basic called on

Fidelity to pay the face amount of the performance bond, and when Fidelity refused suit was instituted.

Since the terms of the performance bond measure the obligations of Fidelity by those of Prestressed, the same defenses are asserted by both. In the District Court they argued alternatively: first, that the contract was substantially performed by Prestressed; second, that it was impossible of exact performance; and third, that Basic is estopped from relying on any breach that may have occurred. The District Court rejected the defenses and granted summary judgment. Prestressed and Fidelity maintain in this court that summary judgment was inappropriate because, in their view, all three defenses raise genuine issues of fact which should be determined only after a full trial.

### I.

■ Appellants contend that the District Judge refused to consider the merits of their defense of substantial performance, and that he erroneously held that the arbitrator had decided the issue and that his decision could not be relitigated. The District Court's opinion, however, clearly indicates that the court considered and rejected the defense on the merits.

The court stated that substantial performance is an equitable doctrine, intended to prevent unjust enrichment, which allows a contractor who has not complied with a contract in every detail to recover for work done which enriches the other contracting party. Since in the instant case the non-complying columns were neither accepted nor used by the owner, there is no question of unjust enrichment and the court concluded that the doctrine was not available as a defense.

We agree with the reasoning of the District Court. The doctrine of substantial performance does not constitute a complete defense to liability for breach of contract, but is designed rather to prevent total forfeiture by a contracting party who is guilty of only trivial breaches of contract. The doctrine is essentially a rule of damages, allowing the breaching party to recover for benefits conferred on the other party, but reducing his recovery by any damages which his breach may have caused. See Kirk Reid Co. v. Fine, 205 Va. 778, 139 S.E.2d 829 (1965); Mann v. Clowser, 190 Va. 887, 59 S.E.2d 78 (1950). The doctrine therefore operates only to assure payment by a party who has obtained substantially what he bargained for; its purpose is not to compel the unwilling acceptance of tendered work that fails to meet contract specifications.

Here, Prestressed is claiming that it substantially performed although it fabricated only forty-five acceptable columns of the two hundred called for by the contract. Basic and the hospital have accepted and paid for the complying columns, while rejecting those which did not meet the contract terms. This is clearly not a case of a contracting party accepting substantial benefits but refusing to pay for them. The District Court was therefore correct in concluding that the defense of substantial performance is unavailable.

In a related argument, the appellants assert that since Prestressed substantially complied with the contract, Basic itself breached the contract by refusing to accept the defective columns. Because, as shown above, substantial performance is no defense in the circumstances, this argument must also fail.

### II.

■ As a further defense, the appellants assert that the contract to fabricate two hundred columns meeting the specifications in every respect was impossible of performance. They argue that the columns, as designed, were extremely difficult to make and that the tight construction schedule set out in the contract made production of two hundred faultless columns impossible.

In Virginia, breach of contract is excused only by objective impossibility of

performance, as stated in *Lehigh Portland Cement Co. v. Virginia S.S. Co.,* 132 Va. 257, 111 S.E. 104, 108 (1922):

> It is well settled, as a general rule, that if performance is rendered merely difficult or burdensome or unprofitable, the promisor is not excused, and the same is true generally if the impossibility is personal to the promisor, and does not inhere in the nature of the act to be performed.

Here no objective impossibility is shown. Prestressed's fabrication of forty-five acceptable columns proves that it was feasible to make columns conforming to the contract terms. The manufacture of two hundred acceptable columns might have been extremely difficult or so expensive as to consume any profit the contractor may have contemplated, but neither factor excuses Prestressed's failure to meet its contractual obligation.

### III.

Appellants' final defense is that Basic waived or is estopped to assert any breach which Prestressed may have committed. When the first columns were being placed in the building, Prestressed and Basic both discovered that the steel reinforcing bars at the base of some of the columns were improperly positioned. The visible defects were corrected and the columns were installed. Appellants now claim that Basic had notice from that time that the steel bars might be displaced throughout the length of the columns. There is no showing, however, that Basic was aware of further uncorrected defects in the columns which it allowed to be placed in the building. Its acceptance of the columns could not therefore constitute a waiver of the defects.

Moreover, the architects rather than Basic had the final authority to accept or reject the work. Basic made every effort to persuade the architects to accept the columns, even hiring its own experts to test the columns, but the architects refused to waive strict observance of the contract. Once the final and binding decision had been made, Basic demanded replacement of the defective columns. At no time did it waive Prestressed's breach. None of its actions estop it from recovery against Fidelity. It must be emphasized that the contract gave unmistakable warning to Prestressed that the obligation it assumed was to make the columns "in strict conformity" with the specifications, and the surety was of course aware that it was guaranteeing this exacting standard of performance. All concerned accepted the architects as the final judges, subject to an arbitration procedure in which the disputed question was submitted in the form agreed upon by the parties and answered in a directly responsive decision.

### IV.

Prestressed alone appeals from the summary judgments entered in favor of the architects, a joint venture consisting of Hayes, Seay, Mattern & Mattern of Roanoke, and Skidmore, Owings & Merrill of New York, and in favor of the Community Hospital of Roanoke.

In its crossclaim against the architects, Prestressed charged them with intentionally interfering with and inducing a breach of its contract with Basic. The District Court held that under the contract the architects exercised a quasi-judicial function in accepting or rejecting work and that they were therefore immune from suit for their decision to reject the non-complying columns unless Prestressed could show that fraud or bad faith motivated the decision. See *Blecick v. School Dist. No. 18,* 2 Ariz. App. 115, 406 P.2d 750 (1965); *City of Durham v. Reidsville Engineering Co.,* 255 N.C. 98, 120 S.E.2d 564 (1961). The architects' decision to enforce literal compliance with the contract may have reflected poor judgment or excessive rigidity, but there is no evidence or even suggestion that they were motivated by malice or bad faith.

Prestressed also crossclaimed against the hospital, alleging that it

wrongfully induced Basic to breach its contract. The hospital refused to accept non-complying columns without the recommendation of the architects who were named in the contract and invested with full authority to make decisions of this nature. In merely taking the position that the contract should be carried out as written, the hospital committed no wrong.

On the testimony, stipulations and documents submitted, the District Court ruled that there was no genuine issue as to any material fact. On appeal, Virginia Prestressed and Fidelity and Casualty have not persuaded us that the District Court erred in this or any other respect. The judgments are accordingly

Affirmed.